IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH, | |
| Plaintiffs, | Case No. 12 C 658 |
| v. | Hon. Harry D. Leinenweber |
| SUN-TIMES MEDIA, LLC d/b/a THE CHICAGO SUN-TIMES and Any Other Known Corporate Name, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss. For the reasons stated herein, the Motion is denied.

## I. FACTUAL BACKGROUND

On April 25, 2004, an altercation arose between David Koschman ("Koschman") and R.J. Vanecko ("Vanecko"), a nephew of then-Mayor Richard M. Daley. The incident resulted in Koschman's death, and, given Vanecko's political connections, gave rise to a high-profile investigation by the Chicago Police Department (the "CPD"). In their investigation, the CPD placed Vanecko in a lineup with several Chicago Police Officers of similar age, complexion, height, and build. Eyewitnesses misidentified some of the officers as the

perpetrator, and the CPD concluded that there was no case to pursue against Vanecko.

Defendant Chicago Sun-Times ran an article on November 21, 2011 that scrutinized the lineup procedure. The article included each "filler" officer's name (including middle initial), birth month and year, height, weight, hair color, and eye color. It listed the source of that data as the CPD and the Illinois Secretary of State. *See,* Compl. Exs. 1 & 2.

Those officers, who take issue with the newspaper's use of their personal information, are the Plaintiffs here. They claim that Defendant violated the Driver Privacy Protection Act (the "DPPA"), 18 U.S.C. § 2721 *et seq.,* and endangered their well-being by obtaining personal information from their motor vehicle records and publishing that information to the public. Plaintiffs seek damages, a declaratory judgment that Defendant violated the DPPA, and an injunction directing Defendant to remove their personal information from its publications (including the online version of the article on Defendant's website).

In its Motion to Dismiss, Defendant contends that (1) the published information is not "personal information" protected by the DPPA and (2) that enforcing the DPPA against it would violate the First Amendment. This Court addressed the first argument in

- 2 -

its September 10, 2012 Opinion and concluded that the published information is "personal information" protected by the DPPA. *See,* ECF No. 21. The Government declined to intervene to address the constitutional question. At the Court's request, the parties provided supplemental briefs on the First Amendment issue. This Court must now address (1) whether the DPPA, as applied to the Defendant, violates the First Amendment and (2) whether the requested injunction constitutes an unconstitutional prior restraint.

## II. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). It "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded facts and draws all inferences in favor of the non-moving party. *Cole v. Milwaukee Area Tech. Coll. Dist.,* 634 F.3d 901, 903 (7th Cir. 2011).

## III. DISCUSSION

### A. The DPPA

The DPPA makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for

any use not permitted under Section 2721(b) of this title." 18 U.S.C. § 2722(a). Section 2721(b), in turn, specifies fourteen permissible uses of personal information obtained from a motor vehicle record. For example, one could use information from a motor vehicle record to provide notice to an owner that her vehicle was towed or impounded, § 2721(b)(7), or in connection with the operation of private toll transportation facilities, § 2721(b)(10). Defendant does not contend that its publication of Plaintiffs' personal information falls within any of these enumerated circumstances. Instead, Defendant argues that the DPPA violates the First Amendment by restricting what information the press can publish.

The Seventh Circuit has held that, on its face, the DPPA does not violate the First Amendment. *Travis v. Reno,* 163 F.3d 1000, 1007 (7th Cir. 1998). The Court left open the possibility of an as-applied challenge, but it was skeptical that one could succeed, because the DPPA restricts access to information, not speech. *Id.*

Defendant brings such an as-applied challenge. Defendant notes correctly that the DPPA must be invalidated in its application when it invades constitutional guarantees, such as the freedom of speech protected by the First Amendment. *See, e.g., Ampersand Pub. v. NLRB*, 702 F.3d 51, 56 (D.C. Cir. 2012). However,

the Court is not persuaded that the DPPA, as applied in this case, limits speech: it does not restrict what the press may publish. Rather, it limits access to information in that it narrows the purposes for which one may use personal information obtained from a motor vehicle record.

Defendant protests that the DPPA, as applied, would prevent it from publishing that a person has brown eyes. Def's. Supp. Br. 7. But that is incorrect: the DPPA does not make it unlawful for the press to publish truthful information such as a police officer's eye color. Rather, the DPPA makes it unlawful to "obtain or disclose" personal information from a motor vehicle record. 18 U.S.C. § 2722(a). Thus, the press can publish that an officer has brown eyes without violating the DPPA as long as it did not obtain that information from the officer's motor vehicle record. The Seventh Circuit put it nicely:

> Peering into public records is not part of the "freedom of speech" that the first amendment protects. There is no constitutional right to have access to particular government information.

*Travis,* 163 F.3d at 1007 (internal quotation omitted).

Defendant contends that applying the law to it affects its ability to disseminate information related to alleged governmental misconduct. It is well established that "generally applicable laws

do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co.,* 501 U.S. 663, 669 (1991). The First Amendment does not allow Defendant to access information from any source and use it however it pleases.

Additionally, the cases upon which Defendant relies are inapplicable because in those cases the published information was obtained lawfully. *See, Smith v. Daily Mail Pub. Co.,* 443 U.S. 97, 104 (1979) (holding that, absent a substantial state interest, the state may not punish the press for publishing lawfully obtained information); *The Florida Star v. B.J.F.,* 491 U.S. 524, 541 (1989) (explaining that the publication of truthful information, when obtained lawfully, can be punished by the state only when such punishment is "narrowly tailored to a state interest of the highest order"). Unlike the defendants in *Smith* and *Florida Star,* Defendant did not obtain the information lawfully, as its purpose for obtaining the Plaintiffs' personal information did not fall within one of the circumstances listed in § 2721(b).

### B.  Prior Restraint

Plaintiffs have requested that this Court enjoin Defendant from any continued publication of Plaintiffs' personal information obtained from their motor vehicle records. They allege that the

harm is ongoing. Defendant contends that Plaintiffs' requested injunction constitutes an unconstitutional prior restraint of speech.

Prior restraints are "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550 (1993). It is true enough that an injunction would forbid Defendant from communicating the information obtained from the motor vehicle record. But for several reasons, Defendant's argument is unconvincing. First, the speech at issue has already taken place, so there can be no concerns about the difficulty of knowing in advance what an individual will say and whether that speech will be legitimate or illegitimate. *See, Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559 (1975).

Second, and perhaps more importantly, Defendant's imprecise reading of the injunction obscures its true purpose. Plaintiffs seek to end the continuing publication of information obtained from their motor vehicle record; that is, they seek to end the ongoing violation of the DPPA, which, as described above, is constitutional as applied to Defendant. Of course, as Defendant contends, anyone who encounters the Plaintiffs can observe their hair, eyes, height,

weight, and approximate age. The issue is not whether other people can discover this information, but whether Defendant obtained this information unlawfully and continues to publish it unlawfully. Whether Plaintiffs will obtain their injunction is a separate issue not yet before the Court, but at this stage Plaintiffs have done all they need to do to claim their entitlement to one.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss [ECF No. 8] is denied.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

**DATE:** 11/18/2013