**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA**, and **EMMET WELCH**, | ) ) ) | Case No. 12 CV 00658 |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | Judge Leinenweber |
| vs. | ) | |
| | ) | Magistrate Judge Brown |
| **SUN-TIMES MEDIA, LLC** dba **THE CHICAGO SUN-TIMES** and any other known corporate name. | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SUN-TIMES MEDIA LLC'S MOTION TO FILE
AN APPLICATION FOR IMMEDIATE APPEAL PURSUANT TO
28 U.S.C. 1292(b) AND FOR A STAY OF PROCEEDINGS**

NOW COMES Defendant Sun-Times Media, LLC ("Sun-Times"), by its undersigned attorneys, and respectfully moves this Court for an Order permitting it to apply for an interlocutory appeal pursuant to 28 U.S.C. 1292(b), and to stay the instant proceedings, or, in the alternative, for reconsideration of the Court's denial of the Sun-Times' Motion to Dismiss, and in support states as follows:

I.      **Background**

1.      Plaintiff's Complaint alleges that the Sun-Times violated the Driver Privacy Protection Act, 18 U.S.C. 2711 ("DPPA"), by describing the physical similarity of police officers selected for a lineup. The reporting questioned the Chicago Police Department's ("CPD") handling of a politically charged homicide involving the former Mayor of Chicago's nephew, Richard Vanecko (the "Lineup Story"). CPD cited witnesses' inability to pick Vanecko out of

1

the questionable lineup as its rationale not to charge him, despite having eliminated as suspects the other three members of Vanecko's party who could have thrown the punch that killed David Koschman. Vanecko was indicted only after a Circuit Judge, citing the Sun-Times' investigative reporting, appointed a special prosecutor to investigate CPD's handling of its investigation. *See* **Exhibit A**. He is expected to stand trial early next year.

2. Plaintiffs do not dispute that the Sun-Times lawfully obtained the lineup names and photographs through a Freedom of Information Act request, but complain that the participant's common characteristics – heights, weights, hair and eye colors, and approximate ages – derived from motor vehicle records. But see *Camara v. Metro North R. Co.* 596 F. Supp. 2d 517 n.9 (D. Conn. 2009) (birth date is not "personal information" because it is not specifically listed in DPPA). *Cf.* 18 U.S.C. §2725(3) ("personal information" covered by DPPA include social security, telephone and driver license numbers, and other unique information that stalkers could use to "identify" a target). This Court initially acknowledged that Plaintiff's interpretation of the DPPA is an "awful stretch" (Transcript of Proceedings, April 12, 2012, **Exhibit B** hereto) but nevertheless denied the Sun-Times' Motion to Dismiss the Complaint pursuant to Fed R. Civ. P. 12(b)(6) (the "Motion").

## II. Interlocutory appeal is proper because the Court's orders involve controlling questions of law interpreting the scope of recent Seventh Circuit decisions

3. An order permitting an interlocutory appeal is appropriate under 28 U.S.C.A. §1292(b) because the Court's rulings involve "controlling question[s] of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order[s] may materially advance the ultimate termination of the litigation." See *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001) (acknowledging that it is a "still-open question" when, if ever, newspaper may

be punished for allegedly unlawful acquisition and publication of truthful information pursuant to a generally applicable statute).  In First Amendment cases, immediate appeal is particularly suited to the Court's "gatekeeper" function.  *Bartnicki* itself arrived at the Supreme Court *via* a §1292(b) appeal to the Third Circuit.  532 U.S. at 521. The Supreme Court even instructs that, whenever possible, resolution of First Amendment cases should "entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation."  *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 469 (2007) (Bipartisan Campaign Reform Act held unconstitutional as applied because prohibition on corporate funding of electioneering communications violated free speech rights).

4.    The Seventh Circuit has explained that §1292(b) interlocutory appeals are particularly appropriate in cases involving interpretation of a "recent decision . . . its scope unsettled."  *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624 (7th Cir. 2010); *see also United Airlines, Inc. v. Mesa Airlines, Inc.,* 219 F.3d 605, 609 (7th Cir. 2000) (interlocutory appeal warranted in light of recent authorities regarding preemption question).

5.    The questions raised by the Sun-Times April 13, 2012 Motion include whether (1) common characteristics constitute "personal information" under the DPPA, and (2) whether newsgathering regarding matters of public interest is protected by the First Amendment to the Constitution of the United States so that application of the DPPA urged by Plaintiffs is unconstitutional.  Compare *Am. Civil Liberties Union of Illinois v. Alvarez ("ACLU"),* 679 F.3d 583, 598-599 (7th Cir. 2012) (enjoining enforcement of eavesdropping statute that prohibited filming of on-duty police officers because First Amendment protected gathering of information).

6.     The Court's own September 5, 2012, Memorandum Opinion and Order (the "DPPA Order") partially denying the Motion conceded substantial ground for a difference of opinion on whether the information is "personal information" under the DPPA, acknowledging:

> "there is a good argument under the statutory cannons of association that 'personal information' ***only includes information*** that identifies a person ***with greater particularity than does height, weight, or even birth month***."

(emphasis added).  The 2012 Order turned solely upon *dicta* from a closely divided Seventh Circuit opinion entered *after* briefing on the Sun-Times Motion closed.  See *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 599 (7th Cir. 2012) (considering whether parking citation placed on motorists windshield constituted "disclosure" under DPPA); DPPA Order, p. 7.

7.     The Court recognized there was a "good argument" that Judge Ripple did not intend to "stretch" an anti-stalking statute to prohibit news media from disclosing public officials' common physical characteristics because Judge Ripple made no such ruling.  *Senne* expressly limited its holding to whether DPPA exceptions for law enforcement and adjudicative disclosures applied to parking tickets.  695 F.3d at 607.  The court never considered, let alone decided, whether height and weight actually constituted "personal information" under the DPPA because the defendant conceded that the citation included "personal information" expressly listed in the statute, such as plaintiff's name and driver's license number.  The court's recitation that the citation included "Mr. Senne's full name, address, driver's license number, date of birth, sex, height and weight" is merely descriptive and does not "stretch" the DPPA beyond its express terms and intended purpose.  Ex. B.[1]  Accordingly, the scope of *Senne* is unsettled and there is no

---

[1]  Unlike *Senne*, the names and images were obtained through FOIA in this case, rendering the distinction material. The *Senne* Defendant ultimately prevailed on summary judgment. *Senne v. Vill. of Palatine*, 10 C 5434, 2013 WL 6197092 (N.D. Ill. Nov. 27, 2013).

controlling authority holding that common characteristics are covered by the DPPA. See *Camara*. 596 F. Supp. 2d at n.9.

8.      Secondly, with respect to the First Amendment, the Court's November 18, 2013 ruling (the "Constitutional Order") that the DPPA does not impinge on the First Amendment is undercut by the Seventh Circuit's recent *ACLU* decision. 679 F.3d at 595-599. The Court distinguished the DPPA because it "does not restrict what the press may publish. Rather, it limits access to information in that it narrows the purposes for which one may use personal information obtained from a motor vehicle record." Order, p. 5. Yet *ACLU,* also decided after the Motion was filed, enjoined an eavesdropping statute when applied to recording police officers because "gathering news and information" is "necessarily included within the First Amendment's guarantee of speech and press rights as a corollary" of the right to publish. *Id*. at 595. *ACLU*'s reasoning should obviate any constitutional distinction between accessing information and publishing news. *See also Ampersand Pub., LLC v. NLRB,* 702 F.3d 51, 56 (D.C. Cir. 2012) (application of National Labor Relations Act unconstitutional where it interfered with newspaper's editorial process).

9.      Thirdly, there is substantial ground for difference of opinion whether Plaintiff's requested injunction against continued publication constitutes a "prior restraint" – the most egregious of First Amendment violations. The Court ruled that the requested injunction — to judicially censor the Sun-Times website — merely sought to end "continuing publication" of speech "that has already taken place." Constitutional Order, p. 7. The Seventh Circuit, however, has described restraints against continued publication, or even distribution of already published materials, as "prior restraints [that] are highly disfavored and presumed invalid". *Weinberg v.*

*City of Chicago*, 310 F.3d 1029, 1045-46 (7th Cir. 2002) (city's peddling license scheme which restricted continued sale of books violated First Amendment).

**III.** **Interlocutory appeal may materially advance the termination of this litigation, obviate burdensome discovery and motion practice, and minimize the "chilling effect" on First Amendment freedoms**

10.     The Motion clearly raised "controlling questions of law" for purposes of §1292(b) because "if the [Complaint] does not state a claim, the case is likely . . . to be over." *Text Messaging*, 630 F.3d at 624. First Amendment and media cases are particularly suited to interlocutory appeal because they often raise threshold questions of law. *See Bartnicki, supra* (constitutional protections for newsgathering); *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (radio broadcast protected by First Amendment); *Groucho Marx Prods., Inc. v. Day & Night Co., Inc.*, 689 F.2d 317, 319 (2d Cir. 1982) (right of publicity). Prompt appeal thereby fulfills the Court's gatekeeper function and combats the "chilling effect" which inevitably follows in the wake of uncertainty and litigation.

11.     As in *Bartnicki*, an immediate appeal in this case will dispose of controlling issues of law and may obviate complex discovery and motion practice that needlessly drains judicial and party resources. The Supreme Court discourages discovery in First Amendment cases because it inherently "chills speech." *Wisconsin Right To Life*, 551 U.S. at 469. Discovery into newsgathering, in particular, triggers collateral litigation over confidential sources that "chills" both press freedoms and the First Amendment generally. See *e.g.*, *Gulliver's Periodicals, Ltd. v. Charles Levy Circulating Co., Inc.*, 455 F. Supp. 1197, 1202 (N.D. Ill. 1978) ("the compelled disclosure of a news source or source material places a restraint on the news gathering process, implicates and involves an infringement on freedom of the press. Disclosure of a news source should not be ordered absent some strong and compelling reason in favor of disclosure."). Such

6

discovery battles in turn may warrant interlocutory appeals. See *Price v. Time, Inc.*, 416 F.3d 1327, 1334 *as modified on denial of reh'g,* 425 F.3d 1292 (11th Cir. 2005) (accepting interlocutory appeal to quash plaintiffs' efforts to compel disclosure of news sources). Discovery into Plaintiff's claimed "privacy" injury may meet resistance and require Plaintiffs and many other police officers to take time away from protecting the public. Extensive third party discovery into CPD's handling of the investigation will bear on the constitutional importance of Sun-Times' newsgathering but may complicate Vanecko's upcoming trial.

12.     A determination of the controlling questions of law in favor of the Sun-Times in the early stages would terminate this litigation without either party having to expend disproportionate expenses in discovery and trial, especially where discovery involves complicated privilege questions, and third party inconvenience.  Consequently, immediate appeal promotes judicial economy and serves Section 1292(b)'s purpose to "materially advance the ultimate termination of the litigation."  To ensure that the appeal accomplishes this objective, this Court should also exercise the discretion afforded by Section 1292(b) to stay the District Court proceedings pending the interlocutory appeal.  *Price*, 416 F.3d at 1334 (district court proceedings stayed pending 1292(b) appeal regarding compelled disclosure of reporter's sources).

13.     Accordingly, the Sun-Times requests that the Court enter an Order allowing the Sun-Times to seek an interlocutory appeal of the Court's two Orders denying its Motion, and particularly the following questions:

> a.     Whether, in light of *Senne*, Plaintiffs can state a claim against the Sun-Times for obtaining "personal information" as defined by the DPPA where the Sun-Times allegedly obtained police officers' heights, weights, hair and eye colors, and approximate ages from motor vehicle records for use

in investigative reporting on the performance of official duties regarding matters of public interest.

b.      Whether, in light of *ACLU*, the First Amendment to the United States Constitution permits an application of the DPPA that would punish the news media for allegedly obtaining from motor vehicle records, and subsequently publishing in investigative reports on the performance of official duties regarding matters of public interest, police officers' heights, weights, hair and eye colors, and approximate ages.

c.      Whether an order enjoining or censoring the Sun-Times from continuing to publish an investigative report that references police officers' heights, weights, hair and eye colors, and approximate ages, allegedly obtained in violation of the DPPA, would constitute a "prior restraint" on publication in violation of the First Amendment.

14.      In the alternative, the Court may reconsider these questions, particularly given that the closest precedents came down only *after* the Sun-Times filed its Motion.  On its face, *Senne* does not address whether common physical characteristics are "personal information" under the *DPPA*. 695 F.3d at 599.  *ACLU* holds that a generally applicable statute cannot constitutionally be applied to punish the press and public for means of gathering truthful information regarding law enforcement officers.  *ACLU,* 679 F.3d at 598-599.  Finally, *Weinberg* holds that prior restraints are unlawful regardless of whether they restrain an initial or continued publication.  *Weinberg*, 310 F.3d 1045-46.  In these circumstances, "reconsideration performs a valuable function" by allowing these issues to be fully addressed. *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

**WHEREFORE**, for the reasons stated herein, the Sun-Times respectfully requests that this Court allow the Sun-Times to apply to the Seventh Circuit to allow it to appeal the foregoing questions pursuant to Section 1292(b), and stay these proceedings pending the appeal, or, alternatively, reconsider its DPPA Order and Constitutional Order denying the Motions.

Respectfully submitted,

**SUN-TIMES MEDIA, LLC**

By:  /s/ Damon E. Dunn
　　　　　One of its attorneys

Damon E. Dunn, Esq.
(#06180629)
Seth A. Stern, Esq.
(#6300954)
**FUNKHOUSER VEGOSEN
LIEBMAN & DUNN LTD.**
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603
Tel.　　(312) 701-6800
Fax:　　(312) 701-6801