IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA**, and **EMMET WELCH**,<br>       Plaintiffs,<br>vs.<br><br>**SUN-TIMES MEDIA, LLC** dba **THE CHICAGO SUN-TIMES** and any other known corporate name.<br>       Defendant. | Case No. 12 CV 00658<br><br>Judge Leinenweber<br><br>Magistrate Judge Brown |

**SUN-TIMES MEDIA LLC'S REPLY IN SUPPORT OF ITS MOTION TO FILE AN APPLICATION FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. 1292(b) AND FOR A STAY OF PROCEEDINGS**

NOW COMES Defendant Sun-Times Media, LLC ("Sun-Times"), by its undersigned attorneys, and for its Reply in Support of its Motion to File an Application for Immediate Appeal Pursuant to 28 U.S.C. 1292(b) and for a Stay of Proceedings, states as follows:

**BACKGROUND**

After failing to obtain a state court injunction, Plaintiffs sued Sun-Times under the Driver Privacy Protection Act, 18 U.S.C. 2711 ("DPPA") for reporting that Chicago Police Department ("CPD") officers in a homicide line-up shared physical traits with the suspect, a nephew of the then Mayor. Plaintiffs characterize the reporting as "sensationalized" even after the Circuit Court appointed a Special Prosecutor to investigate the CPD's role in the investigation.

The Sun-Times' 28 U.S.C. 1292(b) Motion seeks immediate appeal of three questions with respect to its motion to dismiss. Motion, ¶ 13. First, whether the physical characteristics the Sun-Times is alleged to have obtained from driver records were included within the DPPA's definition of "personal information," a question that was not decided in *Senne v. Vill. of Palatine,*

*Ill.*, 695 F.3d 597, 599 (7th Cir. 2012). Order dated Sep. 5, 2012 ("DPPA Order"), p. 6-7. Cf. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627 (7th Cir. 2010) (approving interlocutory appeal to interpret "a recent decision . . . its scope unsettled" on a novel issue the Seventh Circuit discussed "only in passing"). Second, whether the DPPA unlawfully impinges on the First Amendment by restricting newsgathering. Compare Order dated November 18, 2013 ("Constitutional Order") p. 5 with *Am. Civil Liberties Union of Illinois v. Alvarez ("ACLU")*, 679 F.3d 583, 597 (7th Cir. 2012) cert. denied, 133 S. Ct. 651 (2012) (eavesdropping statute may not penalize filming police officers because "the State could effectively control or suppress speech by the simple expedient of restricting an early step in the speech process rather than the end result. We have no trouble rejecting that premise.").[1] Third, whether Plaintiffs' injunctive remedy constitutes a "prior restraint" on publication in violation of the First Amendment. *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045-46 (7th Cir. 2002) (license requirement was unconstitutional prior restraint on continued sale of books).

## ARGUMENT

This Court has already found "there is a good argument under the statutory cannons of association that 'personal information' only includes information that identifies a person with greater particularity than does height, weight, or even birth month." DPPA Order, p. 6. Accordingly, the Motion raised "controlling questions of law" as to which there are "substantial grounds for difference of opinion." 28 U.S.C.A. § 1292(b). Immediate appeal would determine whether the *Senne* court intended to expand the DPPA to reach categories of information that are not listed in the statute and which do not relate to the statue's objectives. It would also

---

[1] Although the Court addressed only access, Plaintiffs also allege disclosure of information from motor vehicle records (18 U.S.C. §§ 2722(a); 2724(a); Complaint, ¶¶ 1, 29-30) and their purported damages arise not from the newsgathering, but from publication of the information. Compl. ¶¶ 16-19.

determine whether here, as with the eavesdropping statute, the First Amendment "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *ACLU*, 679 F.3d at 597 (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978)).

With respect to the First Amendment, the United States Supreme Court has held – on an interlocutory appeal – that it is a "still-open question" whether the First Amendment permits statutes of general application to penalize a newspaper for unlawful *acquisition* of information. *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001). Just recently, the Seventh Circuit struck down an analogous statute that interfered "with the gathering and dissemination of information about government officials performing their duties in public". *ACLU,* 679 F.3d at 601.[2]

Finally, the Seventh Circuit has held that restrictions on *continued* dissemination of newsworthy information represent an invalid prior restraint. *Weinberg*, 310 F.3d at 1045-46.

I.  **Controlling Questions Of Law Unresolved By *Senne* Support Immediate Appeal**

Plaintiffs' Response misstates the Seventh Circuit's standard for immediate appeals pursuant to 28 U.S.C. 1292(b) by arguing that the Sun-Times "must show that there are substantial conflicting decisions regarding the claimed controlling issue." To the contrary, a "case of first impression in this circuit" is particularly suitable for an interlocutory appeal. *Resolution Trust Corp. v. Gallagher*, 10 F.3d 416, 418 (7th Cir. 1993); *Text Messaging,* 630 F.3d at 627 (immediate appeal regarding scope of recent authority). "As these are questions of first impression, the application of these statutes to the facts alleged here is certainly contestable, and

---

[2] The proposition that the Sun-Times acted "unlawfully" if the DMV voluntarily provided information is dubious. In *Oklahoma Pub. Co. v. Dist. Court In & For Oklahoma Cnty.*, 430 U.S. 308, 311(1977), for example, the press attended a juvenile hearing in violation of a state statute closing proceedings. The court held that, by allowing the media to attend, the judge and prosecutor implicitly consented so that attendance and reporting information disclosed at the hearing was lawful.

the resolution of these issues will facilitate the conclusion of the litigation". *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002).

There are only four requirements to certify an order for immediate appeal: "First, there must be a question of law; second, it must be controlling; third, it must be contestable; and fourth, its resolution must promise to speed up the litigation." *Brewton v. City of Harvey*, 319 F. Supp. 2d 890, 892 (N.D. Ill. 2004). Thus, district courts have more recently acknowledged that Section 1292(b) allows immediate appeal where there is "substantial ground for difference of opinion" *regardless* of whether the question has been extensively litigated. *Van Straaten v. Shell Oil Products Co., LLC*, 813 F. Supp. 2d 1005, 1020 (N.D. Ill. 2011) ("the novelty of an issue may demonstrate that an issue is contestable"); *City of Joliet v. Mid-City Nat. Bank*, 05 C 6746, 2008 WL 4889038 (N.D. Ill. June 13, 2008) (issue was contestable because "neither the Seventh Circuit nor any other Circuit Court of Appeals has specifically addressed the preemption arguments raised in this case."). This case presents an obvious candidate because the Court has acknowledged that extrapolating from *Senne* contradicts cannons of statutory interpretation. DPPA Order pp. 6-7; see also 140 Cong. Rec. H2518, 01, H2527 (1994) (statement of Rep. Goss) ("[T]he intent of this bill is simple and straightforward: We want to stop stalkers from obtaining the name and address of their prey before another tragedy occurs").

In truth, *Senne* does not even offer *dicta* on the question presented because the Village admitted that its parking citation included statutory "personal information," such as the owner's address and license number. Like every other case cited in Plaintiffs' Response, *Senne* merely repeated the complaint's allegations listing *all* information disclosed.[3] Therefore, the parties

---

[3] None of the cases cited in the Response's second footnote address, let alone decide, the question posed here because they all included "personal information" expressly listed in the DPPA's definition. *Johnston v. West Publ. Corp.*, 801 F.Supp.2d 862 (W.D. Mo. 2011) (defendant also disclosed driver's license and social security numbers);

4

never litigated and the court never decided whether hair and eye color *also* constituted statutory "personal information." *Cf. Senne v. Vill. of Palatine, Ill.,* 645 F.3d 919, 922 (7th Cir. 2011) (finding "no dispute" on appeal that citation contained personal information, limiting question presented to whether "disclosure" was actionable). Tellingly, the only case cited by either party that actually considered whether shared characteristics (*e.g.*, birth dates) constitute "personal information" held that the doctrine of *expressio unius est exclusio alterius* precludes this particular expansion of the DPPA. *Camara v. Metro-N. R. Co.*, 596 F. Supp. 2d 517, 523, n. 9 (D. Conn. 2009).

The Seventh Circuit should have the opportunity to clarify whether a criminal anti-stalking statute can restrict access to information no stalker conceivably could use to track a victim. *Text Messaging,* 630 F.3d 622 at 627 (interlocutory appeal proper to clarify scope of recent authorities). There is ample reason to doubt Judge Ripple intended any such implication "[b]ecause construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text." *Crandon v. U.S.,* 494 U.S. 152, 160 (1990).

Moreover, "[t]he general test of vagueness applies with particular force in review of laws dealing with speech." *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976). See also *Gentile v. State Bar of Nev*. 501 U.S. 1030, 1048 (1991) (Nevada rule governing attorney speech void for vagueness because attorneys "must guess at its contours").

---

*Manso v. Santamarina & Assocs,* No. 04 Civ. 10276. 2005 WL 975854 (SDNY April 26, 2005) (driver's license numbers); *Gordon v. Softech Intern, Inc.,* No. 10 Civ. 5162(RMB), 2011 WL 1795300 (SDNY April 28, 2011) (addresses and phone numbers). The opinions merely recited the plaintiffs' unlitigated allegations describing *all* the information disclosed, regardless of whether actionable or not.

Thus, the Court's initial skepticism regarding Plaintiff's "stretching" the DPPA's definition of "personal information" was well-founded, and the Seventh Circuit is particularly unlikely to have obscured the contours of a criminal statute, especially in this context. *City of Chicago v. Morales,* 177 Ill. 2d 440, 448, 687 N.E.2d 53, 59 (1997) *aff'd,* 527 U.S. 41 (1999) ("a criminal statute must be sufficiently definite so that it gives persons of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct.").

## II. Recent Seventh Circuit Authority Upholds the Right to Access Information On Matters of Public Import Over Laws of General Application

"Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). That grounds exist for differing opinions on the First Amendment question is obvious at the highest levels of the federal judiciary. The Supreme Court, in reviewing a Section 1292(b) appeal, characterized the allegations confronting this Court – seeking to penalize the press for newsgathering in contravention of a generally applicable privacy statute – as presenting a "still-open question." *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001).[4] While this case was pending, the Seventh Circuit in *ACLU* held that the First Amendment protects "gathering news and information" *regardless* of whether the information is published. *ACLU,* 679 F.3d at 583.

Contrary to Plaintiffs' suggestion, the First Amendment often invalidates statutory burdens on speech unrelated to publication. "[R]estrictions that have been attempted at different stages of the speech process . . . all [have been found] invalid." *Citizens United v. Fed. Election*

---

[4] The Response acknowledges *Bartnicki* held that the press cannot be punished when a source acts unlawfully to provide information (as is alleged here). The "still-open question" is whether the press can be sanctioned when it participates in ostensibly unlawful conduct in the course of legitimate newsgathering. Cf. *Russell v. American Broadcasting Co.*, 1995 WL 330920 (N.D.Ill. May 31, 1995) (undercover reporter secretly recorded conversation in grocery store to investigate food sanitation practices).

*Comm'n*, 558 U.S. 310, 336 (2010). *See, e.g. ACLU, supra*; *Fed. Election Comm'n.*, 551 U.S. at 469 (2007) (Bipartisan Campaign Reform Act unconstitutional as applied because prohibition on corporate funding of electioneering communications violated free speech rights); *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 116 (1991) (law requiring criminals to deposit income from literary works into victim escrow accounts was unconstitutional "disincentive" to speech); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue,* 460 U.S. 575, 582 (1983) (tax on ink and paper "burdens rights protected by the First Amendment"); *Weinberg v City of Chicago*, 310 F.3d 1029, 1046 (7th Cir. 2002) (ordinance unconstitutionally restricted book sale); *Ampersand Pub., LLC v. N.L.R.B.,* 702 F.3d 51, 56 (D.C. Cir. 2012) (NLRA unconstitutionally burdened newspaper's editorial decisions).

The Response implausibly distinguishes *ACLU* by claiming that the statute restricted the public, as opposed to the press, from recording officers. Restrictions on the press are subject to *additional* scrutiny because freedom of the "press" is expressly enshrined in the First Amendment. United States Const., Amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, **or of the press**") (emphasis added); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (media serves as "surrogates for the public"). Thus, the First Amendment protects journalists even when they employ "surreptitious, confrontational, unscrupulous and ungentlemanly" investigatory tactics. *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1355 (7th Cir. 1995). See also *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ("motive to gather news can negate" privacy tort); *Medical Laboratory Management Consultants v American Broadcasting Cos.*, 30 F. Supp. 2d 1182 (D. Ariz. 1998), aff'd 306 F.2d

806, 1190 (9th Cir. 2002) (invasion of privacy "by a member of the print and broadcast press in pursuit of news material" not actionable).

The *ACLU* eavesdropping statute, like the DPPA, was a privacy statute of general applicability that inadvertently operated to restrict the gathering of information on police officers performing official duties. The *ACLU* court invalidated the eavesdropping statute **both** because it restricted a common medium of expression *and* because it restricted newsgathering. 679 F.3d at 601. Protections for newsgathering are not limited to "commonly used" methods. *Desnick*, 44 F.3d at 1355; *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (First Amendment protected secretly recording conversation regarding illegal perks offered to students by university).

As in *ACLU*, penalizing the press for investigating and reporting that public officials in a homicide lineup shared certain physical characteristics will not advance the statute's objective but will chill a "core" First Amendment freedom. 679 F. 3d at 597 (citing "practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs"). Plaintiffs cannot even explain how police are endangered by reporting readily observable physical characteristics shared by millions of Americans. *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (Black, J. concurring) (refusing to enjoin publication of Pentagon Papers because "[t]he word 'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law embodied in the First Amendment").[5] Instead, the Court can take judicial notice of the history and nature of this

---

[5] The Response's contention that whether the application of the DPPA that their Complaint urges is Constitutional is not a "controlling question" strains reason. Obviously, a determination that their relief is not available under the First Amendment would terminate this case. Even the case cited by Plaintiffs, *NMHG Fin. Servs., Inc. v. Wickes Inc.,* 07 C 02962, 2007 WL 3087146 at *2 (N.D. Ill. Oct. 17, 2007), states that questions regarding the "meaning of a statutory or constitutional provision" are controlling questions of law.

litigation, suggesting that the Fraternal Order of Police is behind a campaign of quasi-official harassment aimed at chilling reports of a "cover-up" that ultimately prompted appointment of a special prosecutor. *Cf. People v. Palacio,* 240 Ill. App. 3d 1078, 1101-02 (4th Dist. 1993) (judiciary has a duty to prevent "implicit threat that if the reporter speaks or writes something about the attorney's client or case, the attorney will find 'some ground' to subpoena the reporter").

Plaintiffs also cannot credibly distinguish their privacy interests from the officers' interests in *ACLU*. See *Nat. Assoc. of Criminal Defense Lawyers v. Chicago Police Department,* 399 Ill.App.3d 1, 13 (1st Dist. 2010) (with respect to lineup photos featuring police officers, "the degree of invasion of personal privacy is insignificant"). Indeed, these Plaintiffs' privacy claims were already rejected and abandoned in state court. *Fraternal Order of Police Chicago Lodge No. 7, et al., v. Sun-Times Media, LLC, et al.,* 11 CH 40181 (Cook Cty. 2011). Plaintiffs' Fourth Amendment arguments are even less persuasive because "there is no constitutional right to privacy with respect to the type of information found in motor vehicle records." *Nelson v. Jesson*, CIV. 13-340 RHK/JJK, 2013 WL 5888235 (D. Minn. Nov. 1, 2013) ("Indeed, this is the very sort of information to which individuals do *not* have a reasonable expectation of privacy.").

Finally, *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998), which observed that "[p]eering into public records is not part of the 'freedom of speech' that the first amendment protects," is only a standing case, which reserved the issue of DPPA's constitutionality.[6]

---

[6] *ACLU* subsequently limited the standing analysis in *Travis* by allowing a pre-enforcement challenge when the statute *restricts* access to information. Even when *Travis* ruled that a records request must be denied as a precondition to *filing* a lawsuit to challenge the constitutionality of the DPPA, the court did not "exclude the possibility that some particular record in a drivers-license system may in the future be deemed constitutionally exempt from the Act" and merely declined to decide the DPPA's constitutionality without a "particular record that would put the constitutional issue in context." *Travis,* 163 F.3d at 1007. Standing is evident here so the constitutional question is clearly presented by this case.

Standing to sue for access has no bearing on whether one can be penalized for newsgathering. *Florida Star v. B.J.F*. 491 U.S. 524, 535 (1989) (First Amendment prevented court from penalizing press for publishing victim's name in violation of statute).

In sum, interlocutory appeal is particularly appropriate in First Amendment cases because courts should determine early and as a matter of law whether the relief sought would "constitute a forbidden intrusion on the field of free expression." *Greenbelt Corp. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 11 (1970). The precedents finding that statutes of general application impermissibly burden free speech are legion. *Smith v. Daily Mail Pub. Co.,* 443 U.S. 97, 103-04 (1979) (newspaper could not be penalized for investigating and publishing name of rape victim because "when a state attempts to punish publication after the event it must nevertheless demonstrate that its punitive action was necessary to further the state interests asserted."); *United States v. Alvarez,* 132 S. Ct. 2537, 2548 (2012) (federal statute penalizing "false" claims of military honors conflicted with First Amendment); *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803 (2000) (Telecommunications Act provision violated First Amendment); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg.*, 485 U.S. 568, 575 (1988) (application of NLRA to restrict speech held unconstitutional). If Congress wishes to combat stalking, "it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Sable Commc'ns of California, Inc. v. F.C.C.,* 492 U.S. 115, 126 (1989).

### III. Plaintiffs' Injunctive Remedy Constitutes a Prior Restraint

The Response argues that Plaintiffs do not seek a prior restraint because "the DPPA simply provides Plaintiffs a remedy following publication." Response, p. 11. Yet Plaintiffs' seek *censorship* in the form of an injunction prohibiting further publication. Compl., ¶ 32, , 37.

At least in the Seventh Circuit, remedies that restrict access to information on matters of public importance violate the First Amendment regardless of when they are imposed. *Weinberg*, 310 F.3d at 1046 (ordinance was unconstitutional prior restraint as applied to restrict sale of books critical of the owner of the Chicago Blackhawks near the United Center). *Weinberg* demonstrates that censorship constitutes a "prior restraint" regardless of whether it restricts initial or ongoing publication. *See also Oklahoma Pub. Co. v. Dist. Court In & For Oklahoma Cnty.*, 430 U.S. 308, 311(1977) (court's order prohibiting further publication of juvenile's name or photograph after several stories including his name and picture had already run constituted prior restraint).

IV.     **Immediate Appeal would Advance this Litigation**

Plaintiffs' concession that this case turns on questions of law, rather than fact, pinpoints why immediate appeal is appropriate. *Text Messaging*, 630 F.3d at 624 (upon resolution of controlling issues of law in favor of defendants, the case "is likely . . . to be over."). Plaintiffs merely suggest that an appeal "will only serve to further harm them" even though they have yet to identify any "harm" actually suffered since publication. Response, p. 12.

As *Bartnicki* demonstrates, interlocutory appeals are especially favored in First Amendment cases because they inherently "chill[] speech." *Wisconsin Right To Life*, 551 U.S. at 469. "The kind of discovery requested here not only burdens the news organizations but burdens the public interest in a robust press." *Patterson v. Burge*, 33 Med. L. Rptr. 1200, 2005 WL 43240 at *3 (N.D. Ill. Jan. 6, 2005). Although Plaintiffs assert that "discovery in this case will not be overly broad or extensive" they do not deny that they will seek to depose reporters and sources, a discovery tactic that can generate collateral interlocutory appeals in and of itself. See, *e.g., Price v. Time, Inc.*, 416 F.3d 1327, 1334 *as modified on denial of reh'g,* 425 F.3d 1292 (11th Cir. 2005) (interlocutory appeal to quash compelled discovery of news sources). *Cf.*

11

*Gulliver's Periodicals, Ltd. v. Charles Levy Circulating Co., Inc.*, 455 F. Supp. 1197, 1202 (N.D. Ill. 1978) ("Disclosure of a news source should not be ordered absent some strong and compelling reason in favor of disclosure.").

Should the case proceed, the Sun-Times would be forced to defend itself by deposing plaintiffs and third parties, including other CPD officers and public officials involved in the homicide investigations, on topics ranging from damages to the claim that the reporting was so inaccurate that it forfeited First Amendment protection or did not relate to matters of public concern. There is no reason to proceed with burdensome and expensive discovery, particularly with the Special Prosecutor's criminal case pending, when the controlling questions of law can be promptly resolved by the Appellate Court.

## CONCLUSION

Both of the Court's Orders raise controlling and contestable questions of law, the resolution of which would materially advance the termination of this litigation. Accordingly, for the reasons stated herein and in the Motion, the Sun-Times respectfully requests that this Court allow the Sun-Times to apply to the Seventh Circuit to appeal the Orders and specifically the questions listed in Paragraph 13 of the Motion, pursuant to Section 1292(b). In the alternative, the Court should reconsider its Orders in light of the points and authorities raised in the Motion and herein.

Respectfully submitted,

**SUN-TIMES MEDIA, LLC**
By: /s/ Damon E. Dunn
      One of its attorneys

Damon E. Dunn, Esq (#06180629)
Seth A. Stern, Esq. (#6300954)
**FUNKHOUSER VEGOSEN**
**LIEBMAN & DUNN LTD.**
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603
Tel.   (312) 701-6800
Fax:  (312) 701-6801

13