IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH, <br><br>              Plaintiffs, <br><br>    v. <br><br>SUN-TIMES MEDIA, LLC d/b/a THE CHICAGO SUN-TIMES and Any Other Known Corporate Name, <br><br>              Defendant. | Case No. 12 C 658 <br><br> Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Defendant Sun-Times Media, LLC ("Sun-Times") has moved this Court to certify an Interlocutory Appeal of the Court's Opinions dated September 5, 2012 and November 18, 2013. For the reasons stated herein, the Motion is granted.

**I. BACKGROUND**

This case, brought by several officers of the Chicago Police Department (the "CPD"), raises questions concerning the scope and constitutionality of the Driver's Privacy Protection Act (the "DPPA"), 18 U.S.C. § 2722. On April 25, 2004, an altercation arose between David Koschman ("Koschman") and R.J. Vanecko ("Vanecko"), a nephew of Richard M. Daley, then-Mayor of Chicago. The incident

resulted in Koschman's death, and, in part due to Vanecko's political connections, gave rise to a high-profile CPD investigation. In its investigation, the CPD placed Vanecko in a lineup with several Chicago police officers of similar age, complexion, height, and build. Eyewitnesses misidentified some of the officers as the perpetrator, and the CPD concluded that there was no case to pursue against Vanecko.

Defendant Chicago Sun-Times did a bit of probing and published an article that scrutinized the CPD's lineup procedure. The article included each "filler" officer's name (including middle initial), birth month and year, height, weight, hair color, and eye color; it used this information to argue that the fillers were too similar to Vanecko for the lineup to be effective. Apparently, Defendant obtained the names and photographs through a Freedom of Information Act ("FOIA") request, and from there retrieved the remaining information from the officers' motor vehicle records. A state judge, citing several of Defendant's articles, reopened the investigation and appointed a special prosecutor to investigate Koschman's death. ECF No. 35-1 at 33. In early 2014, Vanecko pled guilty to involuntary manslaughter. Steve Schmadeke, *Daley nephew Vanecko pleads guilty in Koschman death*, Chi. Trib., Feb. 1, 2014, *available at http://articles.chicagotribune.com/2014-02-01/news/*

*chi-koschman-vanecko-20140131_1_vanecko-u-s-attorney-dan-webb-nanci-koschman.*

These filler officers have brought suit, alleging that Defendant violated the DPPA by publishing their personal information after obtaining the information from their motor vehicle records. They seek declaratory relief, money damages, and an injunction mandating that Defendant remove Plaintiffs' information from its publications. Defendant moved to dismiss, arguing that the published information is not "personal information" within the meaning of the Act and, even if it is, enforcement of the Act against it would violate the First Amendment. Defendant also argued that the requested injunction, if granted, would amount to an impermissible prior restraint on Defendant's speech.

In a Memorandum Opinion and Order dated September 5, 2012, the Court rejected Defendant's statutory interpretation argument and held that "the information that Defendant published falls within the ambit of 'personal information' under the DPPA." ECF No. 21 at 7. Although Plaintiffs' names and photographs are unquestionably "personal information," 18 U.S.C. § 2725(3), the Court held that Plaintiffs in this case cannot state a claim as to the disclosure of their names and photographs because Defendant obtained that

information from a FOIA request, not from Plaintiffs' motor vehicle records. ECF No. 21 at 5-6. The Court afforded the Government an opportunity to intervene to defend the statute, and when it declined, the Court accepted supplemental briefing from the parties on the First Amendment issue. In a second Memorandum Opinion and Order, dated November 18, 2013, the Court rejected Defendant's First Amendment defense on the ground that the DPPA "limits access to information" but "does not restrict what the press may publish." ECF No. 33 at 5. The Court held further that an injunction requiring Defendant to remove the internet version of the article would not constitute a prior restraint. *Id.* at 6-8. Defendant seeks permission to apply for interlocutory review of these rulings.

## II. LEGAL STANDARD

A District Court may certify an otherwise non-appealable order for interlocutory appeal if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Such appeals are "rarely granted," *Nystrom v. TREX Co.,* 339 F.3d 1347, 1351 (Fed. Cir. 2003), and the movant bears the burden of showing that "exceptional circumstances justify

a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978). But when the statutory criteria are met, the District Court has a duty to allow the appeal. *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,* 219 F.3d 674, 677 (7th. Cir. 2000).

## III. DISCUSSION

This case raises two questions that meet the statutory test and a third that may be of interest to the Court of Appeals if it decides to hear the appeal. Before turning to the statutory criteria, it is worth noting a few other considerations that weigh in favor of allowing an immediate appeal. Because First Amendment litigation chills speech, prompt resolution of this case would provide the added benefit of minimizing any such chilling effect. Because this case involves a newspaper and its news gathering process, discovery could spawn burdensome motion practice or collateral litigation concerning the newspaper's sources; interlocutory review at this stage might eliminate the need for that discovery. Finally, the case may require third-party discovery into the CPD's handling of the Vanecko investigation so that the parties can argue the constitutional importance of Defendant's newsgathering and reporting on that investigation, all

of which would be unnecessary if this Court is reversed on either of two issues. These concerns do not replace the criteria in § 1292(b) but highlight the additional benefits of prompt, definitive resolution of the pure legal questions presented in this case.

**A. Statutory Interpretation**

The first question is whether the phrase "personal information" in the DPPA includes a person's height, weight, hair color, eye color, and approximate age. The DPPA makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b) of this title." 18 U.S.C. § 2722(a). The scope of "personal information" is a question of law because it involves only statutory interpretation. The issue is controlling because Plaintiffs will have no cause of action if height, weight, hair color, eye color, and approximate age are not protected by the statute. Resolution of this issue "may materially advance the ultimate termination of the litigation" because it might end the case right away, thereby obviating the need for discovery, dispositive motions, and a possible trial.

As to the last requirement under § 1292(b), that the grounds for a difference of opinion be substantial, "personal information" is defined as:

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). The Court held that the word "including" in the statute meant that the items in the list were "illustrative rather than exhaustive," and that "personal information" includes "the information that Defendant published." ECF No. 21 at 6-7. The Court did so in part because *dicta* in a recent Seventh Circuit *en banc* opinion suggested that features such as height and weight were "personal information" protected by the statute. *Senne v. Village of Palatine, Ill.,* 695 F.3d 597, 608 (7th Cir. 2012) *(en banc)* ("The otherwise protected information actually disclosed here included [the plaintiff's] full name, address, driver's license number, date of birth, sex, height and weight.").

But at the same time, all of the items listed in the statute can be used to identify a person with a very high degree of particularity, while a person's height, weight, hair color, eye

color, and birth month and year are merely descriptive. The DPPA was designed to remedy "safety and security concerns associated with excessive disclosures of personal information," *Id.* at 607, and unlike with a person's address, phone number, or social security number, it is not clear how revealing a person's height or hair color threatens that person's safety. The legal question may turn on what the statute means by "identifies" – does the information have to refer to that person and that person only (as with a social security number or driver identification number) or is it enough for the information to describe a characteristic of the person that would apply to many other people as well (*e.g.,* height, weight, and so on). There is reason to think that the DPPA does not protect information about a person that is readily observable, such as height and weight, and thus those facts are descriptive but not "personal." These competing interpretations – both of them defensible and neither of them precluded by binding precedent – evidence substantial grounds for difference of opinion.

### B. First Amendment

The second question is whether the First Amendment permits an application of the DPPA that would prevent the news media from obtaining information from a person's motor vehicle record and publishing that information. This issue is a question of law

because it concerns the interplay of a statute and a constitutional provision. It may not be a "pure" legal question because the constitutional challenge is to the statute as-applied, so to some extent the answer depends on the actions that Defendant is alleged to have taken. But as with the first issue, this is an appropriate question for Defendant to pursue in a § 1292(b) appeal because it is one that "the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz,* 219 F.3d at 677. As with the statutory interpretation question, this constitutional issue is controlling because the case must be dismissed if the First Amendment protects Defendant's conduct. And for the same reason, the appeal may "materially advance the ultimate termination of the litigation" as it could end this case before the parties proceed to discovery and beyond.

This issue also provides substantial ground for difference of opinion. When it denied the Motion to Dismiss, the Court held that the DPPA does not restrict speech but rather "limits access to information in that it narrows the purposes for which one may use personal information obtained from a motor vehicle record." ECF No. 33 at 5. The Court based its decision on commentary from the Seventh Circuit that "[p]eering into public records is not part of the 'freedom of speech' that the first amendment protects." *Travis*

*v. Reno,* 163 F.3d 1000, 1007 (7th Cir. 1998) (rejecting a facial challenge to the DPPA because "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy"). Also relevant to the Court's decision was the principle that "otherwise valid laws serving substantial public interests may be enforced against the press as against others, despite the possible burden that may be imposed." *Branzburg v. Caldwell,* 408 U.S. 665, 682-83 (1972). Adhering to this precedent, the Court rejected the First Amendment defense and denied the Motion to Dismiss.

At the same time, it is possible that Defendant's as-applied challenge could succeed on appeal. At the outset, though this case does not involve a plaintiff suing for access to a specific record, it appears to provide the proper adversarial context for an as-applied challenge: it includes both the "particular record" and "the right defendant" (because the Defendant's "actions cause[d] injury"). *Travis,* 163 F.3d at 1007. More importantly, there is at least a colorable argument that the DPPA restricts speech, just at a "different point[] in the speech process." *Citizens United v. FEC,* 558 U.S. 310, 336 (2010). Defendant argues that the DPPA restricts speech because it restricts its ability to gather and report on the news. In *ACLU of Illinois v. Alvarez,* the Seventh

Circuit invalidated a state eavesdropping law that restricted "nonconsensual audio recording of public officials performing their official duties in public." *ACLU of Illinois v. Alvarez,* 679 F.3d 583, 597 (7th Cir. 2012). The court explained that the act of making an audio recording "is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording." *Id.* at 595.

Unlike with audio recordings, it is probably a stretch to say that motor vehicle records "enable speech" – hence this Court's finding that the law did not trigger First Amendment scrutiny. But the Seventh Circuit's decision in *Alvarez* reaffirmed that "the First Amendment provides at least some degree of protection for gathering news and information, particularly news and information about the affairs of government." *Id.* at 597. Defendant in this case was gathering news and information for subsequent use in its publication, and that information was related to possible misconduct by government officials. In fact, this seems to be the rare case where a government official's height and weight matter, as they relate to whether the CPD should have used these officials as fillers alongside Vanecko.

In addition, the *Alvarez* court was especially skeptical of the government's idea that the privacy law in that case should not

trigger *any* First Amendment scrutiny. *Id.* at 594 (the government's position was "an extraordinary argument"). If this Court is mistaken and the DPPA does burden speech, then the Court will have to consider the First Amendment interests at stake, which may weigh in Defendant's favor given that Defendant's article reported on matters of heightened public concern. Though the Court rejected Defendant's argument, the Court recognizes that a relatively minor change from the Seventh Circuit would require a completely different analysis and could change the result. For these reasons, the Court is satisfied that there exists substantial ground for a difference of opinion on the First Amendment issue.

### C. Prior Restraint

Though the prior restraint issue does not meet the standard in § 1292(b), the Court provides a brief discussion of this issue so that it can address Defendant's arguments and also for the benefit of the Court of Appeals, should it wish to review this issue along with either or both of the preceding issues. It is worth noting that resolution of the prior restraint issue may materially advance the litigation: the damages amount at issue is relatively small, so if an injunction is not available, the parties may find that they are in a much better position to settle the case.

The legal issue presented is whether an order requiring a newspaper to cease publication of a news article – that is, remove the article from its website so that it can no longer be accessed – constitutes a prior restraint on speech. This is a pure question of law because it does not require the application of any underlying facts and there is no record to study. However, this issue is not controlling because Plaintiffs' request for damages would stand, even if the injunction is not available.

In addition, this Court does not see substantial grounds for a difference of opinion. The Court held that the requested injunction, if granted, would not amount to a prior restraint because it would merely "end the ongoing violation of the DPPA." ECF No. 33 at 7. In addition, because the speech at issue has already taken place, "there can be no concerns about the difficulty of knowing in advance what an individual will say and whether that speech will be legitimate or illegitimate." *Id.*

Of course, if Defendant's conduct is protected by the First Amendment, then Plaintiffs will not obtain any remedy, including an injunction. Defendant's argument appears to be that even if its newsgathering is not protected, the article is protected nonetheless because it is speech and it is continuing. In this Court's view, that argument is untenable for the reasons mentioned

above.  Defendant cites *Weinberg v. City of Chicago* and notes correctly that the court in that case found that a licensing scheme was an impermissible prior restraint because it did not "sufficiently curtail the discretion of City officials in granting licenses to peddle." *Weinberg v. City of Chicago,* 310 F.3d 1029, 1046 (7th Cir. 2002).  But this case does not involve anything similar, either licensing procedures or a government official's unbridled discretion to restrict speech.  Thus, the requested injunction would not violate the laws of prior restraint.

## IV. CONCLUSION

The case presents two questions that satisfy the statutory criteria and will resolve this case swiftly if the Court's decisions are reversed.  Therefore, pursuant to 28 U.S.C. § 1292(b), the Court hereby certifies the Court's Opinions dated September 5, 2012 and November 18, 2013 for Interlocutory Appeal to the Court of Appeals for the Seventh Circuit.  Defendant shall serve the Government with Notice of its Application.  Proceedings in this Court shall be stayed while the appeal is pending.

**IT IS SO ORDERED.**

**Dated: April 24, 2014**

Harry D. Leinenweber, Judge
United States District Court