IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH,<br><br>      Plaintiffs,<br><br>      v.<br><br>SUN-TIMES MEDIA, LLC d/b/a THE CHICAGO SUN-TIMES and Any Other Known Corporate Name,<br><br>      Defendants. | Case No. 12 C 658<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Five City of Chicago policemen brought this action against the Sun-Times, a Chicago newspaper, for violation of the federal Driver's Privacy Protection Act (the "DPPA"), 18 U.S.C. § 2721, *et seq.* They allege that the Sun-Times, in violation of the DPPA, obtained and published each Plaintiff's birthdate, height, weight, hair color and eye color from the Illinois Secretary of State's motor vehicle records. The Sun-Times' purpose for obtaining this information was to prove that the Chicago police manipulated a homicide investigation in a high-profile case involving Mayor Richard M. Daley's nephew, Richard Vanecko ("Vanecko"). The police had conducted a line-up using the five Plaintiff officers as fillers which the Sun-Times thought was

unfair because the five officers closely resembled Vanecko. As a result, a witness was unable to identify Vanecko and the charges were subsequently dropped against him. The Sun-Times published the personal information along with photographs of the Plaintiffs in both its paper and on-line editions to show that the five Plaintiffs closely resembled Vanecko.

The Sun-Times moved to dismiss this case on two grounds: that the information was not "personal information" within the meaning of the DPPA, and the statute's prohibition on obtaining and disclosing personal information obtained from the driving records violates the First Amendment. In denying the Motion to Dismiss, this Court determined the challenged information was indeed personal information under the DPPA and the acquisition and publication of the information violated the Act, and the act as applied did not violate the Sun-Times' First Amendment rights.

The Sun-Times was granted an interlocutory appeal to the Seventh Circuit Court of Appeals. The Court reviewed this Court's ruling *de novo* and concluded that the information obtained was personal information under the DPPA, and the Sun-Times possessed no constitutional right, either to obtain the officers' personal information from the motor vehicle records, or to publish the unlawfully obtained information. Thus the

Court affirmed this Court's denial of the Sun-Times Motion to Dismiss.

After remand, the Sun-Times filed an Answer to the Complaint together with nine affirmative defenses. The Plaintiffs have now moved for judgment on the pleadings in their favor. They have also moved to dismiss the nine affirmative defenses, or, in the alternative, to have them stricken. Plaintiffs have also moved for a protective order limiting discovery to the issue of whether the Sun-Times violated the DPPA.

## II. DISCUSSION

The Plaintiffs' position on their Motion is straight forward. The Seventh Circuit opinion left nothing to be decided other than whether to issue an injunction (which the Plaintiffs seem to have dropped because they do not pray of an injunction in this Motion for Judgment). Specifically the Court held that the "Sun-Times violated the Act when it knowingly obtained the Officers' personal details from the Illinois Secretary of State and proceeded to publish them." *Dahlstrom v. Sun-Times Media, LLC,* 777 F.3d 937, 946 (7th Cir. 2015). The Court further stated with respect to the balancing between the privacy interest and a matter of public significance:

> We conclude, however, that the balance in the instant case tips in the opposite direction. Although the Sun-Time article relates to a matter of public

> significance — the allegation that the Chicago Police Department manipulated a homicide investigation — the specific details at issue are largely cumulative of lawfully obtained information published in that very same article, and are thereof of less pressing public concern than the threats of physical violence in [*Bartnicki v. Vopper,* 532 U.S. 514, 536 (2001)].

*Dahlstrom,* 777 F.3d at 953.

However, the Court went on to say that there could be a "scenario involving lesser privacy concerns or information of greater public significance [where] the delicate balance might tip in favor of disclosure. *Id.*

The Sun-Times, on the other hand in its Answer and Affirmative Defenses, wants to reargue all of the same points that it argued before the Seventh Circuit, *i.e.,* first amendment, prior restraint, due process, lack of privacy interest, and public safety (some are couched in new terms: the rule of lenity and constitutional avoidance). The Sun-Times, in addition, raises champerty, maintenance, and Barratry contending that the Fraternal Order of Police is financing the lawsuit, providing the lawyers, and expects some remuneration if Plaintiffs are successful. The Sun-Times also argues that it is entitled to all reasonable inferences in its favor as the non-movement when assessing its answer and affirmative defenses. *Fail-Safe v. A.O. Smith Corp.,* 674 F.3d 889, 892 (7th Cir. 2012).

In response to Plaintiffs' Motion, the Sun-Times makes three principal arguments.  First, with respect to balancing the Plaintiffs' privacy interests versus the public interest in disclosure of the manipulation of the Vanecko investigation, the Answer and First Affirmative Defense require a different outcome because it appears that at the time the Sun-Time requested and obtained the Plaintiffs' personal information, it only had the names of the Plaintiffs and did not have the lineup photographs. Thus, the personal information was not "cumulative" at the time it requested the personal information from the Secretary of State and balancing between the interests requires a different outcome.  Second, the Sun-Times contends that it obtained the personal information from the Secretary of State's press office rather than from the Department of Motor Vehicles (the "DMV"). Thus it lacks knowledge of whether the Secretary of State assessed the DMV records when it disclosed the Plaintiffs' personal information to it.

Third, the Sun-Times argues that obtaining and publishing the personal information fits within the DPPA's non-disclosure exception with respect to matters in the interest of "public safety."

With respect to the Sun-Times' first argument, there are two different issues:  first, was the obtaining of the records justified by the failure of the police department timely to turn

over the line up photographs, the failure of which, in the opinion of the Attorney General, constituted a violation of the Freedom of Information Act ("FOIA"), and, second, was the publication of the personal information, three days after obtaining the photographs, allow for different balancing outcomes? The Sun-Times' best argument is that at the time it obtained the Plaintiffs' personal information it did not have the line-up photographs to compare the fillers with Vanecko. It appears that the Seventh Circuit may well in fact recognize a "balancing" test so that under certain circumstances the press would be allowed to obtain personal information while investigating a matter of public significance and the invasion of privacy was not particularly great. Recall that there are two separate acts here that arguably violate the DPPA. First, obtaining the information, and, second, its publication. Although the record is silent as to the date the Sun-Times obtained the personal information from the Secretary of State, the implication from the pleadings is that it did not have access to the line-up photos at the time it obtained the personal information. Thus a balancing could arguably come out in favor of the Sun-Times for the act of obtaining the personal information. However, at the time of its publication, the Sun-Times did have the photographs so that the personal information

at the time of publication was, as the Seventh Circuit found, "largely cumulative."

The Sun-Times second argument, that it obtained the information from the Secretary of State's office rather than from the Department of Motor Vehicles, goes nowhere. The Department of Motor Vehicles is the Secretary of State. 625 ILCS 5/6-117 obligates the Secretary of State to "file every application for a license or permit accepted under [the Drivers Licensing Law] and shall maintain suitable indexes thereof." 625 ILCS 5/6-110 obligates the Secretary of State to issue "to every qualifying applicant a driver's license as applied for, which license shall bare, inter alia, date of birth, residence address, and a brief description of the licensee." And finally, 625 ILCS 5/2-123 (F-5) (12), similar to the DPPA, specifically authorizes the Secretary of State to disclose or make available personally identifying information obtained in connection with a driver's license to members of the news media for news gathering purposes only when the request relates to the "operation of a motor vehicle or public safety." Nowhere is the Department of Motor Vehicles mentioned. Moreover as Plaintiffs point out, the term "public safety" appears over twenty-five times in the Illinois Vehicle Code and each relates to motor vehicles, drivers, driving violations and other similar subjects relating to motor vehicles. There is not a single instance where "public

safety" refers to investigations of police misconduct or any matter of public significance generally. Finally on this point, the Sun-Times conceded before the Seventh Circuit that it "knowingly obtained this additional identifying information from the motor vehicle records maintained by the Secretary of State" and that Court so found. Consequently, in addition, this is the law of the case.

### A. First Affirmative Defense

The Court finds that the issues concerning the First Affirmative Defense, the "First Amendment," at this stage with respect to the obtaining the personal information presents sufficient questions of fact so that the Motion for Judgment on the Pleadings is denied, but the Motion is granted insofar as publication of the personal information.

### B. Second Affirmative Defense

The Motion for Judgment on the pleadings as to the Second Affirmative Defense, "Official Source" is granted. The Sun-Times contends that the Secretary of State is charged with interpreting the DPPA but there is no basis for that conclusion. The DPPA prohibits a person "knowingly to obtain or disclose personal information from a motor vehicle record." The Sun-Times acknowledged that it did so.

### C. Third Affirmative Defense

The Motion for Judgment on the pleadings as to the Third Affirmative Defense, "Prior Restraint" is granted as the Plaintiffs no longer appear to be seeking an injunction.

### D. Fourth Affirmative Defense

The Motion for Judgment on the pleadings as to the Fourth Affirmative Defense, "Illinois Vehicle Code" is granted. The gist of this defense is that the DPPA allows disclosure to the members of the news media when "the request is related to operation of a motor vehicle or public safety." As stated above the request for personal information was not related to the operation of a motor vehicle or public safety.

### E. Fifth Affirmative Defense

The Motion for Judgment on the pleadings as to the Fifth Affirmative Defense, "No privacy Interest" is granted. The basis of this defense is that police officers are public officials and thus have no privacy interests. This is directly contrary to the Seventh Circuit's opinion which held that the legislative history of the DPPA was "to protect the personal privacy and safety of all American licensed drivers." 140 Cong. Rec H2526. The Plaintiffs are apparently licensed drivers and are thus covered by the Act.

**F. Sixth Affirmative Defense**

The Motion for Judgment on the pleadings as to the Sixth Affirmative Defense, "Champerty, Maintenance and Barratry" is granted. The basis for this defense is the Sun-Times belief that the filing and maintenance of this law suit was solely for the purpose of intimidating the press. However, the Sun-Times does not cite any cases as to why any such agreement between the Plaintiffs and their union would be champertous. English law declared a contract of champerty and maintenance void between the parties and would not authorize dismissal of a suit pursuant to such contract. The question cannot properly arise except in a controversy between the parties to the alleged champertous agreement or their privies. *Torrence v. Shedd,* 112 Ill. 466 (1984).

**G. Seventh and Eighth Affirmative Defenses**

The Motion for Judgment on the pleadings as to the Seventh Affirmative Defense, "Due Process," and the Eight Affirmative Defense, "Rule of Lenity" is granted. The Sun-Times argues that the definition of the term "personal information" is impermissibly vague and ambiguous so the DPPA could be interpreted to allow the obtaining of personal information such as what it sought from the Secretary of State. However as the Seventh Circuit held, the intent of Congress in drafting the DPPA was to provide an expansive reading of "personal

information" and "our interpretation is 'clear and precise enough to give a person of ordinary intelligence fair notice about what is required of him.'" *Dahlstrom,* 777 F.3d at 946. Therefore neither due process nor lenity is applicable.

### H. Ninth Affirmative Defense

The Motion for Judgment on the pleadings as to the Ninth Affirmative Defense, "Constitutional Avoidance" is granted. The argument here is that where there are two interpretations of a statute, one of which poses constitutional problems and the other does not, the court must adopt the construction that does not conflict with the Constitution. However, as the Seventh Circuit held, its interpretation of the statute does no conflict with the Constitution.

### III. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. The Motion for Judgment on the Pleadings is denied as to the claim of obtaining personal information in violation of the DPPA. It is granted with respect to publishing the personal information;

2. The Motion for Judgment on the Pleadings is denied as to the First Affirmative Defense with respect to obtaining the personal information from the Secretary of State and is granted with respect to the publication of the personal information;

3. The Motion for Judgment on the Pleadings is granted as to the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Affirmative defenses; and

4. The Motion for a Protective Order is granted in part. Discovery is limited to the obtaining and publishing of the Plaintiffs' personal information and the issue of damages claimed by the plaintiffs. Since Vanecko was subsequently indicted, pled guilty, and is currently incarcerated, there is no need to retrace all of the manipulation of the Vanecko investigation.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: September 29, 2016