IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DAHLSTROM, HUGH GALLAGLY, )<br>PETER KELLY, ROBERT SHEA, )<br>and EMMET WELCH )<br> )<br>Plaintiffs, )<br> )<br>vs. )<br> )<br>SUN-TIMES MEDIA, LLC dba/ THE CHICAGO )<br>SUN-TIMES and any other known corporate name )<br> )<br>Defendant. ) | Case No. 12 CV 00658<br><br>**Honorable Judge**<br>**Harry D. Leinenweber** |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO
RECONSIDER THE COURT'S ORDER PARTIALLY GRANTING
PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs, SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH ("Plaintiffs"), by and through their attorneys, submit this Response to Defendant, SUN-TIMES MEDIA, LLC's, Motion to Reconsider this Court's Order Partially Granting Plaintiffs' Judgment on the Pleadings. In support, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs filed their Complaint on January 30, 2012, alleging Defendant, Sun-Times Media, LLC ("Sun-Times" or "Defendant") violate the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et. seq.*, when it obtained Plaintiffs' full names, height, weight, eye color, hair color, and month and year of birth from the Illinois Secretary of State, and published that information in its online and print media. (Dkt. No. 1). On April 13, 2012, Defendant filed its Motion to Dismiss Plaintiffs' Complaint. In its Motion, Defendant argued

that none of the information it obtained and published was within the scope of the DPPA, and that the First Amendment protects it against any DPPA violation. (Dkt. No. 8). In two separate rulings, on September 5, 2012, and November 18, 2013, this Court denied Defendant's Motion. (Dkt. Nos. 21 and 33).

In the September 5, 2012, ruling, this Court denied Defendant's Motion to Dismiss, in part, and "conclude[d] the information that Defendant published falls within the ambit of 'personal information' under the DPPA." (Dkt. No. 21, p. 7). In the November 18, 2013, ruling, the Court denied Defendant's Motion to Dismiss in full and found that the DPPA did not violate the First Amendment as applied. (*See generally* Dkt. No. 33). On April 24, 2014, this Court granted Defendant's Motion for Interlocutory Appeal to the Seventh Circuit. (Dkt. No. 44).

On May 11, 2015, the Seventh Circuit Court of Appeals affirmed this Honorable Court's orders denying Defendant's Motion to Dismiss. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015). In its opinion, the Seventh Circuit concluded the following:

    a. The DPPA's definition of "personal information" extends to the Plaintiffs' personal details the Sun-Times published. *Dahlstrom,* 777 F.3d at 939;

    b. The Sun-Times possesses no First Amendment right either to obtain the officers' personal information from government records or to subsequently publish that unlawfully obtained information. *Id.* at 940.

    c. Information including age, hair color, eye color, weight, and height falls squarely within the universe of information that "identifies" an individual and, therefore, the DPPA is "clear and precise enough to give a person of ordinary intelligence fair notice about what is required of him." *Id.* at 946 (quoting *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 835 (7th Cir. 2014)).

    d. The DPPA's prohibition on obtaining an individual's personal information

        from motor vehicle records does not trigger heightened First Amendment scrutiny, requires only rational basis review, and easily satisfies the deferential rational basis standard. *Id.* at 946-949.

    e.    The Sun-Times' publication of the Plaintiffs' personal details both intruded on their privacy and threatened their safety, while the personal details are of marginal public value and does little to advance Sun-Times' reporting on a story of public concern. The Government's asserted interests are both important and furthered by the DPPA's prohibition on disclosure, and are unrelated to the suppression of free expression and instead relate to the promotion of public safety. Therefore, the DPPA is narrowly tailored to withstand intermediate scrutiny. *Id.* at 950-954.

    f.    Sun-Times violated the DPPA when it obtained the Plaintiffs' personal details from the Illinois Secretary of State and proceeded to publish them. *Id.* at 949, 954.

After remand, Plaintiffs requested that the Court enter judgment on the pleadings on both Plaintiffs' obtainment and publication claims under the DPPA. (Dkt. No. 68). On September 29, 2016, this Court issued a written Opinion and Order granting in part, and denying in part, Plaintiffs' request ("Order"). (Dkt. No. 80), 2016 U.S. Dist. LEXIS 134227 (N.D. Ill. Sep. 29, 2016). This Court correctly entered judgment in favor of Plaintiffs on their publication of personal information ("publication") claim against Defendant, holding that the Seventh Circuit had already applied a heightened scrutiny balancing test to that claim and determined that "the specific details at issue are largely cumulative of lawfully obtained information published in that very same article, and are thereof of less pressing public concern than the threats of physical violence in [*Bartnicki v. Vopper*, 532 U.S. 514, 536, (2001)]." Order, pp. 3-4, 6-7, quoting *Dahlstrom,* 777 F.3d at 953.

This Court also held that the Illinois Secretary of State's Office ("SOS") is not a third-party because the Illinois Department of Motor Vehicles ("DMV") obligates and authorizations the SOS to maintain and disclose the personal information at issue here.

3

Order, p. 7. This Court also held that "public safety" as defined in the Illinois Vehicle Code, has no relation "to investigations of police misconduct or any matter of public significance generally." Order, p. 7-8. Additionally, this Court correctly ruled that the Sun-Times has no basis to conclude that the SOC is the "Official Source . . . charged with interpreting the DPPA." Order, p. 8)

This Court also denied judgment on Plaintiff's obtainment of personal information ("obtainment") claim against Defendant by applying the same heightened scrutiny "balancing test" used on Plaintiffs' publication claim. Order, p. 6. This Court concluded that since Defendant had obtained Plaintiffs' personal information prior to obtaining the photographs in question, "a balancing could arguably come out in favor of the Sun-Times for the act of obtaining the personal information." *Id.* Plaintiffs are currently challenging this part of the Court order in their own Motion for Consideration . (Dkt. No. 112).

In its Memorandum in Support of its Motion to Reconsider, Defendant is now attempting to rehash the same arguments it argued before this Court in its Motion to Reconsider ("Defendant Memo") the Court's Order entering judgment in favor of Plaintiffs on their "publication" claim. (Dkt. No. 110 & 111). The Defendant also adds arguments that have no bearing on the Seventh Circuit's decision or this Court's Order at issue. (Id.)

First, Defendant rehashes its "Official Source" argument that, since the SOS authorized the release of Plaintiffs' personal information, and Defendant relied on that authorization, Defendant is exonerated from liability under the DPPA. Defendant Memo, pp. 4-9. Second, Defendant argues that *Reed v. Town of Gilbert,* 135 S. Ct. 2218 (2015), changes the Seventh Circuit's analysis with regard to balancing "content neutral" restraints,

and therefore, the Court's should reconsider its decision. Third, Defendant argues that discovery has flipped the Seventh Circuit's inferences on the delicate balance of newsworthiness. All of these arguments fail for the reasons stated below

## LEGAL STANDARD

Under FRCP 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Manley v. Boat/U.S., Inc.,* 2017 U.S. Dist. LEXIS 186185, p. 2-3 (N.D. Ill. Nov. 9, 2017). The Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Id.,* See also, *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).

## ARGUMENT

**I.      The Secretary of State's Interpretation of DPPA Does Not Matter**

The Defendant attempts to argue that the SOS's interpretation of the DPPA has an effect on this case. That is simply not true. In fact, all the Defendant is highlighting is, if Plaintiffs had sued the SOS under the DPPA, the SOS would be just liable. Under 18 USC § 2721 of the DPPA, a "State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available" the type of personal information that the Sun-Times obtained and published. Instead, Defendant was

sued under 18 USC § 2721, which makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record."

The Defendant attempts to argue that the SOS has the authority to interpret the DPPA under the often analyzed *Chevron* case. *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984). Defendant then argues that 18 U.S. Code § 2721 (a), of the DPPA authorizes the SOS to interpret the laws of the DPPA. Of course, Section 2721 (a) does no such thing, but instead, merely states that stated departments "shall not knowingly disclose" personal information as defined by the DPPA. The Defendant's argument makes no logical sense. Under the same section that makes it illegal for the SOS to disclose personal argument, Defendant has turned that section into a self-serving apparatus where the State polices itself and makes its own determinations on how "personal information" and "public safety" is defined by the DPPA.

Of course, the Seventh Circuit has made the determination on what is considered "personal information" under the DPPA. *Dahlstrom v. Suntimes,,* 777 F.3d at 953. Instead, Defendant relies on a litany of cases where federal laws gave state agencies the authority to interpret and enforce those laws. Defendant Memo, pp. 5-6. Here, not only does the DPPA not give the state such authority, but a plain reading of Section 2721(a) finds that a state department will be liable for violating its provisions. Also the Defendant uses a slight of hand by arguing "personally identifying information" is defined under Ill. Admin. Code tit. 92, § 1002.20. However, that definition is very similar to the definition of "personal information" under the DPPA, 18 U.S.C, 2725. The same definition before the Seventh Circuit when it ruled in favor of Plaintiffs.

Defendant then argues, via a self-serving affidavit from an SOS employee, that

6

"public safety" means something entirely different than its plain meaning. (Defendant Memo, p. 6). The Sun-Times, via the SOS, attempts to argue that journalism concerning law enforcement's treatment of politically embarrassing crimes relates to "public safety." However, nowhere does such an argument or holding exist except in the Sun-Times's attempt to avoid liability.

In fact, the Seventh Circuit does an exemplary job in explaining what "public safety" is throughout its decision. *Dahlstrom,* 777 F.3d 937. The Seventh Circuit Court correctly uses the term as it relates to "public safety goals, . . . public safety objectives . . . [and] public safety measure[s]" in protecting drivers and their personal information. *Id.* Not once does the Seventh Circuit use "public safety" as it relates to the Sun-Times' reporting on alleged police misconduct. That is because the *Drivers* Privacy Protection Act and the Illinois *Vehicle* Code only use "public safety" as it relates to drivers, drivers' information, vehicles, and licenses. (*Emphasis added*).

As Plaintiffs have previously argued, "public safety" is listed over twenty-five (25) times in the Illinois Vehicle Code.[1] Every single mention of "public safety" within the Code relates to motor vehicles, operation of vehicles, licenses, drivers, drivers' permits, driving violations, licenses plates, passengers, vehicle insurance, public safety officers and agencies, etc. *Id.* Every mention "public safety" within the IVC relates to motor vehicles, operation of vehicles, licenses, drivers, drivers' permits, driving violations, licenses plates, passengers, vehicle insurance, public safety officers and agencies, etc.

---

[1] 625 ILCS 5/2-123(12), (13); 625 ILCS 5/3-660(d); 625 ILCS 5/6-103.1(8), 108(b), 201(7), 205(c)(1), 205(d)(1), 206(c)(3), 206.1, 208(b)(5); 625 ILCS 5/7-504; 625 ILCS 5/11-1426.1(d), 1426.2(c) & (d), 1429(b)(4); 625 ILCS 5/18a-404(1)(d) & (2); 625 ILCS 5/18c-1103(f), 1202(7), 4102(k), 625 ILCS 5/18c-7401(3), 7402(2)(b), 7402.1; 625 ILCS 5/20-301(l)**;** 625 ILCS 27/5(d).

Additionally, most of the time "public safety," as cited in the Code, relates to whether a specifically defined set of drivers threaten, or endanger "public safety."[23] Thus, even in an expansive view where such personal information could be published by news media under the "public safety" exemption and not related to vehicles and driving, it would be in a situation where a murderer or criminal poses and an immediate danger to the "public safety" of Illinois Citizens, not to exemplify lineup fillers in a lineup photo in a seven year old police corruption case at the time the news article was published.

In fact, in the same "Sale of Information" section of the Illinois Administrative Code that defined "personally identifying information", it shows that "public safety" is related specifically to the Illinois Vehicle Code when discussing "operation of a motor vehicle or public safety" as it related to the waiver of a 10-day waiting period:

> The notification, *10-day waiting period, and non-disclosure of personally identifying information provisions shall not apply* to requests made by law enforcement officials, governmental agencies, financial institutions, attorneys, insurers, employers, automobile associated businesses, family members with written consent, the individual personally, *or reporters or news media,* or to other business entities *for purposes consistent with the Illinois Vehicle Code*. The *exemption to the notification, 10-day waiting period,* and non-disclosure of personally identifying information provisions *shall apply to the aforementioned* requestors or to an authorized agent of the requestor acting within the scope of his or her employment, if such *use is related to the operation of a motor vehicle*

---

[2] "'Show cause hearing' means that the Secretary has good cause to believe that a driver may be a *danger to public safety* and welfare for violations of IVC Sections 6-103, 6-108, 6-207 and/or 6-201(a). The Department will send notice to the driver, who then has an opportunity to show cause why his/her driving privileges should not be cancelled at a formal hearing conducted pursuant to IVC Section 2-118." 92 Ill. Adm. Code 1001.410 (*Emphasis added*).

[3] "Burden of Proof; Not Eligible for Reinstatement - Hardship Required. Petitioners who are not eligible for reinstatement of driving privileges or whose driving privileges are suspended at the time of their hearing must prove, by clear and convincing evidence, that there is no reasonable alternative means of transportation available, that they *will not endanger the public safety* and welfare, and that an undue hardship will result if they are not issued an RDP. The Secretary of State does not weigh the nature or extent of a petitioner's hardship against the risk he/she poses to the public safety and welfare. Rather, the petitioner must first carry the burden of proving that he/she *will not endanger the public* safety and welfare in order for the Secretary of State to consider whether the petitioner has an undue hardship."
92 Ill. Adm. Code 1001.420, (*Emphasis added*).

*or public safety*.

92 Ill. Adm. Code 1002.45 (*Emphasis Added*).

Common sense dictates that "public safety" is related to the Illinois Vehicle Code, and the disclosure of "personal information" under the "public safety" exemption is to protect the general public from danger, not as it relates to a police corruption scandal.

The Defendant then argues that since itobtained the information from the SOS, it relied on the government, which exonerates it from liability. (Defendant Memo, p. 2). Once again, the Sun-Times misses the point. As stated above, just because the SOS also violated the DPPA by disclosing unlawful personal information, does not mean that the Defendant can avoid liability when the DPPA explicitly finds a violation when a person knowingly obtains personal information, no matter if the SOS gave them that information voluntarily. 18 USC 2721(a) & 2722(a).

The Defendant then attempts to rely on *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001) and its progeny, for the proposition that it cannot be punished by publishing lawfully obtained information. (Defendant Memo, pp. 7-8). However, Defendant is simply restating an argument that the Seventh Circuit summarily rejected. The Seventh Circuit found that the Defendant did unlawfully obtain Plaintiffs' personal information, and therefore, found a in favor of Plaitniffs :

> Where the acquirer and publisher are one and the same, a prohibition on the publication of sensitive information operates as an effective deterrent against the initial unlawful acquisition of that same information. Such acquisition carries little benefit independent of the right to disseminate that information to a broader audience. We therefore conclude that the government's deterrence interest is both important and likely to be advanced by the DPPA's ban on Sun-Times's disclosure of the Officers' personal information.

*Dahlstrom* 777 F.3d at 952. Of course, the cases the Defendant cites are the same cases it

used in its appeal and in its Petition for Writ of Certiorari to the Supreme Court, which was denied. In those cases, the acquirer of the lawful information was different from the publisher. Here, Defendant unlawfully acquired *and* published Plaintiffs' personal information, in violation of the DPPA. It does not matter the degree of unlawfulness as the Defendant tries to argue. Once again, Defendant cannot accept the Seventh Circuit's ruling that ruled the obtainment was unlawful. Although Plaintiffs and their counsel think highly of this Honorable Court, they have found no case law finding that is can overrule a reviewing court's decision. That's is exactly what the Defendant is attempting to do.

Finally, Defendant argues it could not have knowingly violated the "DPPA" if the SOS gave them the information. However, the DPPA finds a violation if Defendant knowingly obtains and discloses Plaintiffs' personal information. Defendant admitted that it contacted the SOS to unlawfully obtain personal information at issue. Therefore, it knowingly obtained and published the proscribed information. Its attempt at arguing that "Plaintiffs convinced the Court to decide the Sun-Times possessed "requisite intent" *before* discovery" demonstrates that this Court followed the Seventh Circuit's ruling when granting Plaintiffs judgment on the pleadings.

## II. The Supreme Court Ruled that the Signs in *Reed* were Content Based, Thus it is Not Applicable to the Case at Bar

Defendant argues that the Supreme Court case of *Reed v. Town of Gilbert,* 135 S. Ct. 2218 (2015)*,* holds that content neutral restrictions are now subject to strict scrutiny. However, what is perplexing about Defendant's argument is that the Supreme Court ruled that the Town of Gilbert, Arizona's outdoor sign restrictions in *Reed* were, in fact, a facially content based regulation of speech, reversing the Appellate Court's decision. 135 S. Ct. at

2228. The Supreme Court, in a 9-0 decision, ruled that the "Town's Sign Code is content based on its face" because it regulates the signs based on the communicative message they convey. *Id.*

The Supreme Court differentiated the Town's sign code with the ban in the case of *Ward* v. *Rock Against Racism*, 491 U. S. 781, 791 (1989), because *Ward* was facially content-*neutral* ban on the use, in a city-owned music venue, of sound amplification systems not provided by the city. 135 S. Ct. at 2228-29. Similar to *Ward* the DPPA's ban on disclosing personal information has nothing to do with the message that personal information conveys, but instead, imposes such restrictions to protect the safety and privacy of those individuals who provided personal information to state DMVs.

Defendant then relies on *Norton v. City of Springfield,* 806 F.3d 411 (7th Cir. 2015), to argue that the Seventh Circuit reversed its position on content-neutral regulations. However, the Seventh Circuit specifically stated that it would wait to decide the issue of content based versus neutrality until the Supreme Court decided *Reed. Norton,* 806 F.3d at 411-412. In quoting *Reed,* the Seventh Circuit stated that "regulation of speech is content based if a law applies to particular speech because of the topic discussed *or* the idea or message expressed." 135 S. Ct. at 2227 (emphasis added). Springfield's ordinance regulates 'because of the topic discussed.'" *Id.* at 412. In following *Reed,* the Seventh Circuit held that it does not matter that the content is neutral with regard to ideas or viewpoints, only that it regulates speech targeted at a specific subject matter, and it struck down a Springfield law that prohibited verbally panhandling for money, but allowed signs requesting money." *Id.* at 41413.

Once again, *Norton* does not apply to the Seventh Circuit's decision here because the

11

DPPA's ban on disclosing personal information is not meant to regulate free speech. The DPPA's purpose is to protect the personal information of drivers in the interest of their safety and privacy. Moreover, the Seventh Circuit applied a content neutral analysis because the personal information was regulated by source:

> The DPPA proscribes only the publication of personal information that has been obtained from motor vehicle records. The origin of the information is thus crucial to the illegality of its publication—the statute is agnostic to the dissemination of the very same information acquired from a lawful source. *The Supreme Court has concluded that disclosures that are prohibited "by virtue of the source, rather than the subject matter"* are easily categorized as content neutral.

*Dahlstrom,* 777 F.3d 949.

Additionally, what Defendant fails to mention is that the content itself, personal information, is not a form of speech. It is correct that the court applied a content-neutral analysis because, as applied, it prevent the Defendant's publication of that information. However

**III. Discovery Has Absolutely No Relevance to the Seventh Circuit's Balancing Test**

Defendant attempts to argue that the discovery completed in this case tips the balance in favor of itself. (Defendant Memo, p. 12). However, Plaintiffs need not delve too far into this argument because the discovery on this matter as it relates to liability simply does not matter. The Seventh Circuit ruled the following:

> Although the *Sun-Times* article relates to a matter of public significance . . . the specific details at issue are largely cumulative of lawfully obtained information published in that very same article, and are therefore of less pressing public concern than the threats of physical violence in *Bartnicki.* . . . While Sun-Times provided details of the Officers' physical traits to highlight the resemblance between the "fillers" and Vanecko, most of the article's editorial force was achieved through publication of the lineup photographs that Sun-Times obtained through its FOIA request—the value added by the inclusion of the Officers' personal information was negligible. Each Officer's height is evident

12

> from the lineup photographs, while their weights and ages are relevant only to the extent that they increase the Officers' resemblance to Vanecko—a resemblance that the photographs independently convey. And, although identifying the Officers' hair and eye colors may add some detail to the published black-and-white photographs, their personal information is largely redundant of what the public could easily observe from the photographs themselves. Therefore, Sun-Times's publication of the Officers' personal details both intruded on their privacy and threatened their safety, while doing little to advance Sun-Times's reporting on a story of public concern.

*Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d at 953.

Nothing in discovery changes the analysis of the Seventh Circuit's decision or this Court's entry of judgment against Defendant. Defendant attempts to argue that a second photo lineup of other individuals shows that the Plaintiffs' are conspicuously even more similar in stature and therefore create an "optical illusion," but that is not a factor in this Court's or the Seventh Circuit's analysis that Plaintiffs' personal information that Defendant discloses is "largely cumulative." (Defendant Memo, pp. 12-13). No matter how much Defendant believes the second photo lineup shows the dissimilarities with Plaintiff's photo lineup, Plaintiffs' personal information still only confirms that Plaintiffs and Vancko were similar in stature. (Defendant Memo, p. 12).

What is telling, however, is that even though Defendant now argues that the fillers in the second photo lineup are not the same size or stature, especially when compared to Plaintiffs' photo lineup, Defendant does not paste the personal information of those lineup fillers under that second photo lineup to show those dissimilarities. (Defendant Memo, pp. 12-13, Ex. F). Nor does Defendant discuss the dissimilarities of the men in the second photo lineup except to state that one of the men was older. (Defendant Memo, pp. 12-13, Ex. F). Instead, as the article states, that second lineup was included because it was relevant to the investigation because it included Vanecko's friends who were on scene with him.

13

(Defendant Memo, pp. 12-13, Ex. F). Finally, this information was available to Defendant prior to its appeal, and yet it is only now that Defendant has determined that it somehow makes its story more of a significant public concern

Instead, although the Sun-Times did a commendable job in investigating other aspects of the Vanecko investigation, a reading of this particular article demonstrates how much a non-story it is. The point of the article – screamed out in its ALL CAPS headline – was that "Vanecko was the Biggest Guy On Scene, But Not In Lineup." Of course Vanecko was not the biggest person in the lineup. That is exactly the point of a lineup. If Vanecko was the biggest person in the lineup, he would be easy to pick out and the lineup and the lineup would be easily suppressed in criminal court for its inherent unfairness to Vanecko. Such a lineup where Vanecko was the biggest guy would violate Illinois laws on conducting lineups. (725 ILCS 5/107A-5, *repealed & replaced* by 725 ILCS 5/107A-2(f)(3) (2015)).

Defendant's second argument with regard to what it found in discovery is even more of a non-starter. Defendant argues that Plaintiffs testified that they did not fear for their safety and their privacy rights were not infringed upon. (Defendant Memo, pp. 14-15). That is completely untrue, but it does not matter for the sake of liability. What is important with regard to liability is the *Government's* interest the safety and privacy interests of the individuals they are attempting to protect by enacting the DPPA. As the Seventh Circuit held: "[c]ertainly, in context, the significance of the Officers' personal information does not rise to the level of the threats of physical violence at issue in *Bartnicki,* and therefore *does not override the government's substantial interest in privacy protection. Dahlstrom,* 777 F.3d at, 953-54, (Emphasis added).

Indeed, the first prong of intermediate scrutiny is whether the *government's* interests

are both important and further by the DPPA's prohibition on disclosure between "publishing matters of private importance" *Id.* at 954. The "second prong of the analysis, both of the *government's* interests—(1) deterring the initial illegal acquisition of personal information, and (2) protecting the privacy of individuals whose information has been illegally obtained—are unrelated to the suppression of free expression and instead relate to the promotion of public safety." *Id.* The final prong is whether the government's regulation is narrowly tailored only that it encroached upon free speech "to the extent necessary to further those government interests." *Id.*

It is correct that the analysis was limited to the "facts and circumstances of this case." *Id.* But only as it relates to Plaitniffs' personal information being disclosed (which Defendant does not deny[4]), Defendant's public significance in disclosing that information, and the government's interests protecting that information in spite of the first amendment infringement it may cause. *Id.* at 949-954. Indeed, there is not one bit of analysis dedicated to Plaintiffs' personal safety and privacy interests. *Id.* That is because the intermediate scrutiny analysis, as applied here, is the balance between Defendant's first amendment rightss versus the Government's substantial interests, regarding the personal information at issue.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order denying Defendant's Motion to Reconsider.

---

[4] Defendant argues in footnote 7 that the SOS did not provide plaintiffs' month and year of birth. However, Novak testified that he procured the information from Lexis, which gathers that information from the Illinois SOS and required users to submit that they are not violating the DPPA before accessing that information.

By: /s/ Ronald C. Dahms
One of Plaintiffs' Attorneys

Ronald C. Dahms
Law Offices of Ronald C. Dahms
North Frontage Road, Suite 3020
Northfield, Illinois 60093
(312) 609-0060

**CERTIFICATE OF SERVICE**

      I, the undersigned, state that I served the foregoing Response toMotion to Reconsider, upon the below named persons, via the ECF Filing System of the Northern District of Illinois, on March 5, 2018.

Damon E. Dunn, Esq.
Seth A. Stern, Esq.
FUNKHOUSER VEGOSEN LIEBMAN & DUNN, LTD.
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603

                                              *s/ Ronald C. Dahms*
                                              Ronald C. Dahms
                                              Plaintiffs' Attorney

Law Offices of Ronald C. Dahms
540 North Frontage Road, Suite 3020
Northfield, Illinois 60093
(312) 609-0060