IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 12 CV 00658 |
| vs. | ) ) | |
| SUN-TIMES MEDIA, LLC dba/ THE CHICAGO SUN-TIMES and any other known corporate name, | ) ) ) ) | **Honorable Judge Harry D. Leinenweber** |
| Defendant. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO RECONSIDER THE COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS ON THEIR "OBTAINMENT" CLAIM UNDER THE DPPA**

Plaintiffs, SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH, by and through their attorneys, respectfully request that this Court reconsider its opinion issued on September 29, 2016, denying judgment in favor of Plaintiffs on their "obtainment" claim under the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et. seq*. Replying in support of their Motion, Plaintiffs state the following:

**INTRODUCTION**

In response to Plaintiffs' Motion to Reconsider the Court's Order denying Plaintiff's obtainment claim, the Sun-Times makes the same arguments that were made in its Motion to Reconsider the Court's Order granting Plaintiffs' publication claim, completely ignoring the Seventh Circuit's ruling on this case. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015). However, the argument that Sun-Times fails to

address in Plaintiff's Motion to Reconsider is that the Seventh Circuit applied a rational basis review on Plaintiffs' obtainment claim, and found that the Sun-Times' obtainment of Plaintiffs' personal information from their motor vehicle records was not speech, and therefore, was not subject to heightened First Amendment at all.

Instead, the Sun-Times continue to argue why the Seventh Circuit's decision was wrong or was overruled by other cases, and how discovery (not relevant to the Seventh Circuit's analysis) should sway this Court to overrule the Seventh Circuit's decision. However, as this Court stated in the Order at issue, the Seventh Circuit's opinion "is the law of the case" and will continued to be followed by this Court. (Dkt. No. 80, Order, p. 8).

## ARGUMENT

I. **None of the Sun-Times' Cited Supreme Court and Seventh Circuit Case Law is Applicable to the Seventh Circuit's Ruling on Plaintiffs' Obtainment Claim.**

In the Appellate Opinion, the Seventh Circuit concluded "that Sun-Times has not alleged a cognizable First Amendment injury with respect to the DPPA's prohibition on obtaining information from driving records—a limitation only on *access* to information." *Dahlstrom,* 777 F.3d at 947 (*Emphasis is original*). Quoting its opinion in *Travis v. Reno*, the Seventh Circuit rejected a facial challenge to the DPPA and held that "[p]eering into public records is not part of the 'freedom of speech' that the first amendment protects" since there was "'no constitutional right to have access to government information, or to require openness from the bureaucracy.'" *Id.*, quoting 163 F.3d 1000, 1007 (7th Cir. 1998).

2

The Seventh Circuit noted that certain government proceedings, such as those related to the judicial process, may deserve heightened scrutiny, but held in the case at bar that "[t]here is no corresponding need for public participation in the maintenance of driving records, which can hardly be described as an 'essential component' of self-government." *Id.*

The Seventh Circuit concluded that the DPPA's prohibition of obtaining an individual's "personal information from motor vehicle records does not trigger heightened First Amendment scrutiny, and instead requires only rational basis review" because "*it is not a restriction on speech at all*" *Id.* at 949 (*Emphasis added*). The Seventh Circuit held that the DPPA easily satisfies the deferential rational basis test because limiting access to personal information in motor driving records is rationally related to the government's legitimate interest in "preventing 'stalkers and criminals [from] acquir[ing] personal information from state DMVs . . ..'" *Id.*, quoting *Maracich v. Spears*, 133 S. Ct. 2191. 2198 (2013).

In its Response to Plaintiffs' Motion to Reconsider the Court's Order Denying Plaintiffs' Obtainment Claim ("Response"), Sun-Times attempts to use Supreme Court and Seventh Circuit case law to restate the same arguments either the Seventh Circuit rejected in *Dahlstrom*, or have no relevance to the Seventh Circuit's findings regarding Plaintiffs' obtainment claims.  (Dkt. No. 113, Def. Response).

First, *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2228 (2015), is not applicable, since the Supreme Court ruled that the Town of Gilbert signs were, in fact, content-based. Here, the Seventh Circuit ruled DPPA's prohibition on obtaining information was "not part of the 'freedom of speech' that the first amendment protects . . .." *Dahlstrom,* 777 F.3d

at 947 (*Emphasis is original*), quoting *Travis v. Reno,* 163 F.3d 1000, 1007 (7th Cir. 1998). Indeed, in *Reed,* the Supreme Court ruled that because the signs were content-based, a strict scrutiny analysis applied, and did not rule that content-neutral prohibitions on free speech warranted a higher level of scrutiny. *Reed,* 135 S. Ct.at 2228.

The Sun-Times then attempts to compare this case with Supreme Court and Seventh Circuit cases that deal with restrictions on speech on their face. Def. Response, pp. 10-11; see *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) (banning sex-offenders from using social media); *Brown v. Phillips*, 801 F.3d 849, 853 (7th Cir. 2015) (Restricting sex offenders from viewing R-rated movies). Once again, the Sun-Times refuses to acknowledge that the Seventh Circuit ruled that the DPPA's restriction on obtaining driver motor vehicle information "*is not a restriction on speech at all*" *Dahlstrom,* 777 F.3d at 949 (*Emphasis added*).

The Sun-Times then argues that even under rational basis review, the DPPA's restriction on obtaining personal information from DMV records is unconstitutional. However, the Seventh Circuit ruled:

> Because limiting public access to driving records is rationally related to the government's legitimate interest in preventing "stalkers and criminals [from] acquir[ing] personal information from state DMVs," the restriction easily satisfies the deferential rational basis standard.

*Dahlstrom,* 777 F.3d at 949. *Maracich*, 133 S. Ct. at 2198; *see also Wis. Educ. Ass'n Council*, 705 F.3d at 653 (setting forth the rational basis test). The Sun-Times attempts to argue that discovery in the case somehow dooms Plaintiffs' obtainment claims. However, as with all analysis under the different levels of scrutiny, the Court is analyzing the entity's

interests and reasons for imposing a restriction on speech, not whether Plaintiffs' personal testimony reinforce the government's interests and reasons. Thus, it does not matter at all what any party may have stated in discovery. Instead, because the DPPA was enacted by the federal government, a determination on whether a restriction passes the rational-basis test is whether the restriction is rationally related to *government's legitimate interest*. *Dahlstrom*, 777 F.3d at 949.

II. **As with Their Motion to Reconsider, the Sun-Times Argument that the Illinois Secretary of State was Authorized to Interpret and Disclose "Personal Information" is Not Relevant**

The Sun-Times attempts to argue that the Illinois Secretary of State's ("SOS") interpretation of the DPPA has an effect on this case. That is simply not true. In fact, all the Defendant is highlighting is, if Plaintiffs had sued the SOS under the DPPA, the SOS would be just liable. Under 18 USC § 2721(a) of the DPPA, a "State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available" the type of personal information that the Sun-Times obtained and published. The Sun-Times has yet to cite anything in the DPPA or case law addressing the DPPA, that shows that the federal government "authorized the States to interpret and enforce the DPPA" as alleged in its Response. Def. response, p. 5. Instead the Sun-Times now argues that the obtaining of Plaintiffs' personal information was not a case of theft, and simply obtained the information after the SOS released it. (Id., pp. 4-5). However, the Sun-Times' position is entirely misleading since it was Sun-Times reporters that knowingly requested and unlawfully obtained Plaintiffs' personal information from the SOS, in direct violation of the DPPA. 18 USC § 2722.

The Sun-Timest cites to its Memo in Support of its Motion for Reconsideration dated (the "Sun-Times Memo," Dkt. No. 111, pp. 4-9)), to argue that the SOS has the authority to interpret the DPPA under the often analyzed *Chevron* case. Def. Response, p. 5; *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984). The Sun-Times then argues that 18 U.S. Code § 2721 (a), of the DPPA authorizes the SOS to interpret the laws of the DPPA. Of course, Section 2721 (a) does no such thing, but instead, merely states that departments "shall not knowingly disclose" personal information as defined by the DPPA. The Sun-Times's argument makes no logical sense. Under the same section that makes it illegal for the SOS to disclose personal information, Defendant has turned that section into a self-serving apparatus where the State polices itself and makes its own determinations on how "personal information" and "public safety" is defined by the DPPA. (Def. Response, pp. 4-8).

Of course, the Seventh Circuit has made the determination on what is considered "personal information" under the DPPA. *Dahlstrom,,* 777 F.3d at 946. Not only does the DPPA *not* give the state such authority, but a plain reading of Section 2721(a) finds that a state department will be liable for violating its provisions. Also, the Defendant uses a slight of hand by arguing "personally identifying information" is defined under Ill. Admin. Code tit. 92, § 1002.20. (Def. Response, pp. 5-6). However, "personal information" under the DPPA, 18 U.S.C 2725(3), is much broader in that it defines personal information as "information that identifies an individual." Of course, the Seventh Circuit interpreted the definition of "personal information" under 18 U.S.C 2725(3), when it ruled in favor of Plaintiffs. *Dahlstrom,,* 777 F.3d at 946.

The Sun-Times argues that since it obtained the information from the SOS, it relied on the government's interpretation on whether it could receive that information, and shouldn't be punished. (Def. Response, p.5). Once again, the Sun-Times misses the point. As stated above, just because the SOS also violated the DPPA by disclosing unlawful personal information, does not mean that the Defendant can avoid liability when the DPPA explicitly finds a violation when a person knowingly obtains personal information, no matter if the SOS gave them that information voluntarily. 18 USC 2721(a) & 2722(a).

Defendant then argues, via a self-serving affidavit from SOS Counsel, Donna Leonard, that "public safety" means something entirely different than its plain meaning. (Def. Response, p. 6 & Ex. A, paras. 5-7). The Sun-Times, via the SOS, attempts to argue that journalism concerning law enforcement's treatment of politically embarrassing crimes relates to "public safety." However, nowhere does such an argument or holding exist, not even in the SOS affidavits, except in the Sun-Times's attempt to avoid liability after the fact. (Def. Response, Exs. A, B). Moreover, citing the Leonard Affidavit, the Sun-Times argues that "Illinois *also* interprets the Code's exemption for 'newsgathering... when the request relates to the operation of a motor vehicle or public safety' to authorize the release of records to the press for a story about police misconduct." (Def. Response, p. 6 & Ex. A, para 6). Of course, nowhere in the Leonard Affidavit does she state that a story about "police misconduct" relates to "public safety.". (Def. Response, Ex. A, para. 6). More, the Leonard Affidavit is devoid of any type of statements that the Plaintiffs' personal information is of "general public safety" relevance. (Id.). Instead, the affiant uses hearsay ("it is my understanding") to state that since the SOS did not consider Plaintiffs' height, weight, eye

7

color, hair color, month and date of birth[1], to be personal information, that information was released to the Sun-Times. (Id., para. 7). More, Affidavit of SOS Press Secretary, David Drucker, doesn't even mention the term "public safety," and instead states Plaintiffs' personal information was given to the Sun-Times because that information was "public information for a news purpose," and amazingly, the Illinois SOS "has the authority . . . to exempt news media requests from the DPPA" altogether. (Def. Response, Ex. B, paras. 4, 5).

In fact, the Seventh Circuit does an exemplary job in explaining what "public safety" is throughout its decision. *Dahlstrom,* 777 F.3d at 937. The Seventh Circuit Court correctly uses the term as it relates to "public safety goals, . . . public safety objectives . . . [and] public safety measure[s]" in protecting drivers and their personal information. *Id.* Not once does the Seventh Circuit use "public safety" as it relates to the Sun-Times' reporting on alleged police misconduct. That is because the *Drivers* Privacy Protection Act and the Illinois *Vehicle* Code only use "public safety" as it relates to drivers, drivers' information, vehicles, and licenses. (*Emphasis added*).

The Defendant then attempts to rely on *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001) and its progeny, for the proposition that it cannot be punished by publishing lawfully obtained information. (Def. Response, pp. 5-6). However, Defendant is simply restating an argument that the Seventh Circuit summarily rejected. The Seventh Circuit found that the

---

[1] SOS Affidavits do not state that the SOS provided Plaintiffs' month and year of birth. However, Novak testified that he procured the information from Nexus Research Database, which gathers that information from the Illinois SOS and required users to submit that they are not violating the DPPA before accessing that information. (Ex. 1, Novak Dep., 50:4-51:17).

Defendant unlawfully obtained Plaintiffs' personal information, and therefore, found in favor of Plaintiffs :

> Where the acquirer and publisher are one and the same, a prohibition on the publication of sensitive information operates as an effective deterrent against the initial unlawful acquisition of that same information. Such acquisition carries little benefit independent of the right to disseminate that information to a broader audience. We therefore conclude that the government's deterrence interest is both important and likely to be advanced by the DPPA's ban on Sun-Times's disclosure of the Officers' personal information.

*Dahlstrom* 777 F.3d at 952. Of course, the cases the Defendant cites are the same cases it used in its appeal and in its Petition for Writ of Certiorari to the Supreme Court, which was denied. In those cases, the acquirer of the lawful information was different from the publisher. Here, Defendant unlawfully acquired *and* published Plaintiffs' personal information, in violation of the DPPA. It does not matter the degree of unlawfulness as the Defendant tries to argue. Once again, Defendant cannot accept the Seventh Circuit's ruling that ruled the obtainment was unlawful.

Additionally, Defendant argues it could not have "knowingly" violated the DPPA if the SOS gave them the information. (Def. Response pp. 5-6). However, the DPPA finds a violation if Defendant knowingly obtains and discloses Plaintiffs' personal information, not a violation if Defendant knowingly violated the statute. 18 U.S.C. §§ 2721(a); 2722(a). Defendant admitted that it contacted the SOS to knowinlgy obtain personal information at issue. Therefore, it knowingly obtained and published the proscribed information. The Sun-Times argues that it relied on the SOS, and therefore it did not

The Sun-Times then relies on the Supreme Court case, *The Fla. Star v. B.J.F.*, 491 U.S. 524, 534 (1989), for the proposition that reliance on the government as a source

9

protect itself from punishment for disclosing that information. Def. Response, p. 8. However, the difference between this case and *The Fla. Star* is that the Florida Star lawfully obtained the information, where as here, the Sun-Times violated the DPPA when it knowingly obtained Plaintiffs' personal information. The Seventh Circuit explained the difference between the Florida Star Defendant and Sun-Times, finding that the Sun-times cites "no authority for the proposition that an entity that acquires information by breaking the law enjoys a *First Amendment* right to disseminate that information. Instead, all of the many cases on which Sun-Times relies involve scenarios where the press's initial acquisition of sensitive information was lawful." *Dahlstrom,* 777 F.3d 937, contrasting Sun-Times with defendants in *The Fla. Star v. B.J.F.*, 491 U.S. at 533 and *Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 103, (1979).

    The Sun-Times then argues that the Seventh Circuit was incorrect finding that "motor vehicle records were not a "common and ubiquitous' news source", and therefore, *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), is analogous to the case at hand. Def. Response, pp. 11-12. However, the Seventh Circuit made the distinction between the cases because *ACLU* was about an eavesdropping statute that restricted "the use of a *common, indeed ubiquitous, instrument of communication*" and found that "the act of harvesting information from driving records is hardly such an instrument." *Dahlstrom,* 777 F.3d 937, quoting, *ACLU,* 679 F.3d at 596. The Seventh Circuit's application and contrast of *ACLU* to the facts at hand had nothing to do with a "common news source"

Finally, the Sun-Times cites *Graczyk v. W. Pub. Co.,* 660 F.3d 275, 279 (7th Cir. 2011), for the proposition that "a publisher cannot be liable for obtaining DMV information absent unlawful use." However, *Graczyk* does not hold such a proposition at all. Instead, the Seventh Circuit held that since the publisher disclosed "personal information" under one of the DPPA's permissible use exemptions, then the publisher could not be held to have violated the DPPA by merely obtaining that information, as "there is no meaningful difference" between the publisher's purposes for obtaining and publishing the information. *Id.*

## **CONCLUSION**

The Court's manifest error of the law in applying a balancing test to Plaintiffs' obtainment claim directly contradicts the Seventh Circuit's ruling that the DPPA's prohibition on obtainment need only be rationally related to a legitimate government interest. Thus, this Court should have granted Plaintiff's Motion for Judgment on the Pleadings with regard to their obtainment claim.

WHEREFORE, Plaintiffs request that this Honorable Court reconsider its September 29, 2016, Opinion and Order, and issue an order granting judgment in favor of Plaintiffs on their DPPA obtainment claim and any other relief it deems proper.

                By: /s/ Ronald C. Dahms
                   Attorney for Plaintiffs

Law Offices of Ronald C. Dahms
540 North Frontage Road, Suite 3020
Northfield, Illinois 60093
(312) 609-0060

## **CERTIFICATE OF SERVICE**

I, the undersigned, state that I served the foregoing Reply in Support of Plaintiffs' Motion to Reconsider, upon the below named persons, via the ECF Filing System of the Northern District of Illinois, on March 20, 2018.

Damon E. Dunn, Esq.
Seth A. Stern, Esq.
FUNKHOUSER VEGOSEN LIEBMAN & DUNN, LTD.
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603


                                              *s/ Ronald C. Dahms*
                                              Ronald C. Dahms
                                              Plaintiffs' Attorney


Law Offices of Ronald C. Dahms
540 North Frontage Road, Suite 3020
Northfield, Illinois 60093
(312) 609-0060