IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH, | |
| Plaintiffs, | Case No. 12 C 658 |
| v. | Judge Harry D. Leinenweber |
| SUN-TIMES MEDIA, LLC d/b/a THE CHICAGO SUN-TIMES and any other Known Corporate Name, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Both parties seek reconsideration of this Court's September 29, 2016, Memorandum Opinion and Order (ECF No. 80). For the reasons stated herein, Defendant's Motion to Reconsider (ECF No. 110) is denied, and Plaintiffs' Motion to Reconsider (ECF No. 112) is granted.

## I. BACKGROUND

Five police officers brought this action against Sun-Times Media, LLC ("Sun-Times"), a Chicago newspaper, for obtaining personal information about them from state motor vehicle records and publishing that information in its coverage of a politically-charged homicide investigation. In April 2004, David Koschman died after an altercation with R.J. Vanecko, nephew to Richard M. Daley, then-Mayor of Chicago. The subsequent Chicago Police Department ("CPD") investigation resulted in no charges against Vanecko because no eyewitness positively identified him. Not relevant to this case, but certainly noteworthy, is that after the CPD failed to bring charges, a special prosecutor was appointed to investigate Koschman's death. The investigation led to Vanecko's

indictment and charge of a single count of involuntary manslaughter. Vanecko pled guilty in January 2014.

The Sun-Times published a series of investigative reports criticizing the CPD's investigation and failure to bring charges against Vanecko. One article in the series is at the center of this case. On November 21, 2011, the Sun-Times published an article titled, "Daley Nephew Biggest Guy on Scene, But Not in Lineup," which described how the lineup contained only men who closely resembled Vanecko. The Sun-Times accused the CPD of manipulating the lineup to lead to misidentification and thus stop charges from being filed. The article included two lineup photos: the first lineup comprising fillers—Plaintiffs—and the second lineup comprising Vanecko's friends present at the scene of the crime. Alongside the photos, the Sun-Times published a graphic that identified Plaintiffs in the first lineup by name and birthdate, as well as by height, weight, hair color, and eye color (collectively "the Information"). Plaintiffs allege that the Sun-Times violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*, by (1) obtaining personal information from their motor vehicle records and (2) disclosing that information to the public.

The Sun-Times moved to dismiss that claim, arguing that the DPPA does not prohibit the type of information disclosed by the Sun-Times and that even if it did, the DPPA's prohibitions as applied violated the First Amendment. The Court denied the Sun-Times' Motion to Dismiss but granted an interlocutory appeal to the Seventh Circuit. *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998 (N.D. Ill. 2014). The Seventh

Circuit affirmed this Court's ruling, holding that: (1) the Information constituted "personal information" under the DPPA; (2) the DPPA's prohibition on obtaining personal information did not warrant heightened First Amendment scrutiny, and, as such, was rationally related to the government's legitimate interest; and (3) the DPPA's prohibition on disclosing personal information was content-neutral, and passed muster under intermediate scrutiny by furthering important government interests unrelated to suppression of free expression and not restricting more speech than was necessary to further those interests. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015). In other words, the DPPA, as applied, did not violate the First Amendment in prohibiting the Sun-Times from either obtaining the officers' personal information from motor vehicle records or subsequently disclosing that information. *Id.*

After remand, the Sun-Times filed its Answer to the Complaint, pleading nine affirmative defenses. Plaintiffs moved for judgment on the pleadings and to strike the affirmative defenses. The Court granted Plaintiffs judgment on the pleadings as to the disclosure claim, but denied it as to the obtainment claim, reasoning:

> The Sun-Times' best argument is that at the time it obtained the Plaintiffs' personal information it did not have the line-up photographs to compare the fillers with Vanecko. It appears that the Seventh Circuit may well in fact recognize a "balancing" test so that under certain circumstances the press would be allowed to obtain personal information while investigating a matter of public significance and the invasion of privacy was not particularly great. Recall that there are two separate acts here that arguably violate the DPPA. First, obtaining the information, and, second, its publication. Although the record is silent as to the date the Sun-Times obtained the personal information from the Secretary of State, the implication from the pleadings is

> that it did not have access to the line-up photos at the time
> it obtained the personal information.  Thus a balancing could
> arguably come out in favor of the Sun-Times for the act of
> obtaining the personal information.  However, at the time of
> its publication, the Sun-Times did have the photographs so
> that the personal information at the time of publication was,
> as the Seventh Circuit found, "largely cumulative."

*Dahlstrom v. Sun-Times Media, LLC*, No. 12-c-658, 2016 WL 5477889, at *3 (N.D. Ill. Sept. 29, 2016).  Correspondingly, the Court struck the First Amendment affirmative defense as to the disclosure claim.

Now, after further discovery between the parties, both parties move the Court to reconsider its earlier ruling.

## II.  ANALYSIS

### A.  Motion to Reconsider Standard

No final judgment has been entered in this case, thus Rule 54(b) governs the parties' Motions for Reconsideration. Under Rule 54(b), "any order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment."  FED. R. CIV. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012).  Courts may grant motions for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence."  *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).  "[M]anifest error is not demonstrated by the disappointment of the losing party," but rather by the "misapplication or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation and citation omitted).  The rule allows the court to correct its own errors and avoid unnecessary

- 4 -

appellate procedures. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).

### B. The Parties' Motions to Reconsider

Plaintiffs' and the Sun-Times' arguments for their respective Motions to Reconsider substantially overlap and so will be addressed together. As already described, the Court granted Plaintiffs judgment on their disclosure claim, but not on their obtainment claim. Plaintiffs argue they are entitled to judgment on both, however, and that this Court erred by applying a higher scrutiny balancing test—as opposed to a rational basis test—to the obtainment claim.

Plaintiffs are correct. The Seventh Circuit applied the balancing test to the disclosure claim because of the First Amendment implications. *See Dahlstrom*, 777 F.3d at 949 (citing *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (finding that "if the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category")). But the Seventh Circuit distinguished the First Amendment concerns at play with disclosure from those at play with obtainment stating, "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 946 (quoting *Pell v. Procunier*, 417 U.S. 817, 833 (1974)) (internal quotations omitted). Thus, the Seventh Circuit ruled that because Plaintiff's obtainment claim constituted "a limitation only on access to information," it should be judged by the rational basis standard and does not require a heightened scrutiny balancing test. *Id.* at 949.

This Court's earlier ruling failed to trace that distinction. The Court's earlier reasoning applied the balancing test applicable to the disclosure claim to the obtainment claim as well, even though the First Amendment implications are not present in the latter. Accordingly, the Plaintiffs' Motion is well taken. Whether the Sun-Times obtained Plaintiffs' personal information before or after the Sun-Times received the photographs is irrelevant to the obtainment claim because heightened scrutiny does not apply. The appropriate standard is rational basis, which requires that the law bear "a rational relationship to a legitimate government interest." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013). The obtainment claim withstands rational basis scrutiny because the government has a legitimate interest in "prevent[ing] stalkers and criminals from utilizing motor vehicle records to acquire information about their victims." *Id*; *see also Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013) (discussing the 1989 murder of television actress Rebecca Shaeffer by an obsessed fan who obtained her unlisted home address from a motor vehicle record, which served as the impetus for the DPPA's passage). In other words, the DPPA reflects the government's legitimate interest in public safety, and such interest is rationally related to the DPPA's prohibition on obtaining personal information from driving records. By applying the correct level of scrutiny, the Court finds that its prior determination on the obtainment claim was misplaced.

However, the Court's acknowledgment that it erred on the obtainment claim analysis does not necessarily get Plaintiffs over the finish line.

- 6 -

The Sun-Times raises several arguments against judgment on the pleadings for Plaintiffs which fall into three categories: (1) the Sun-Times' reliance on the Illinois Secretary of State's ("Secretary") authorization to disclose the Information; (2) the Supreme Court's recent decisions in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), and *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015); and (3) new evidence uncovered in discovery.

### 1. *The Secretary of State's Authority*

Under the first category, the Sun-Times raises several arguments for why the Court must reconsider its ruling, including: (1) the Secretary authorized disclosure of the Information, making the Sun-Times' publication lawful; (2) as such, the Court must defer to the Secretary's authorization under *Chevron v. Natural Resource Defense Council*, 467 U.S. 837 (1984); (3) in the alternative, the Sun-Times was entitled to rely on the Secretary's implied representation of the lawfulness of disclosing the Information; and (4) the Sun-Times could not have "knowingly" violated the DPPA because it relied on the Secretary's authorization of the Information.

Turning to the first argument, the Sun-Times offers the declaration of Donna Leonard, the executive counsel of the Illinois Secretary of State, which asserts that the Secretary disclosed the Information to the Sun-Times based on the Secretary's policy that the Information was not "personal information" under the DPPA. The Sun-Times argues that it cannot be held liable where it relied on the Secretary's determination that the Information was not covered under the DPPA. However, the DPPA

says otherwise. The Secretary might have violated Section 2721(a)—which prohibits the Secretary from "knowingly disclos[ing]" personal information—but its violation does not immunize the Sun-Times from liability under Section 2722(a)—which prohibits any person from knowingly obtaining or disclosing personal information from a motor vehicle record for any non-permitted use. Put simply, an initial violation by one party does not negate subsequent violations by another. *See Dahlstrom*, 777 F.3d at 952 (finding that here, "there is no intervening illegal actor: [the] Sun-Times itself unlawfully sought and acquired the Officers' personal information from the Secretary . . . and proceeded to publish it"). The Sun-Times "knowingly" requested and obtained the Information from a motor vehicle record. *See Pavone v. Law Offices of Anthony Mancini, Ltd.*, 205 F. Supp. 3d 961, 967 (N.D. Ill. 2016) (finding that the "knowingly" element "does not require proof that the defendant knew he was obtaining, using, or disclosing information *illegally*" (emphasis added)). As established by the Seventh Circuit, the Information here constitutes personal information, *id*. at 493-97. Thus, the Sun-Times' actions fall squarely within Section 2722(a), regardless of whether the Secretary lawfully or unlawfully disclosed the Information.

The Sun-Times' reliance on *Chevron* deference is also misplaced. *Chevron* deference only applies where "an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124 (2016); *see Christensen v. Harris Cnty.*, 529 U.S. 576, 596-97 (2000)

(Breyer, J., dissenting) (stating that where it is in doubt that Congress intended to delegate interpretive authority to an agency, *Chevron* is "inapplicable"). The Sun-Times points to no authority showing that the Secretary was authorized to issue regulations interpreting the DPPA. The Sun-Times mentions 18 U.S.C. § 2721(a), but, as provided above, this provision prohibits the Secretary from "knowingly disclos[ing]" personal information; it has nothing to do with granting the Secretary the requisite interpretive authority. The Illinois Secretary is not authorized to interpret the DPPA—a federal statute—for the rest of the country. While the Secretary—just like all other parallel agencies in the country—must interpret the statue to comply with it, that is not tantamount to having delegated authority to interpret the statute *authoritatively*.

The Court turns next to the Sun-Times' third argument: the Sun-Times was entitled to "rely on the government's implied representations of the lawfulness of dissemination." *Fla. Star v. B.J.F.*, 491 U.S. 524, 536 (1989). At first glance, the argument seems meritorious. In *Florida Star,* a rape victim sued a newspaper that published her name after obtaining it from a publicly-released police report. *Id.* at 528. The Supreme Court held that imposing damages on the newspaper violated the First Amendment, reasoning that the paper had lawfully obtained the information from a police report placed in the press room. *Id.* at 541. "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Id.* at 535. However, as the Seventh Circuit already observed,

- 9 -

*Florida Star* is distinguishable. The defendant in *Florida Star* lawfully obtained the victim's name from a publicly-available police report whereas here, the Sun-Times obtained the Information "by breaking the law." *See Dahlstrom*, 777 F.3d at 950. The Seventh Circuit concluded that the Sun-Times enjoys no First Amendment right to publish the Information because it broke the law. *Id.*

The Sun-Times' argument fails even when the Sun-Times characterizes its reliance on the Secretary as a good faith defense. As one court recognized, "the express unambiguous language of the DPPA does not create a good faith defense or bestow immunity upon those who rely upon state agencies to act in compliance with its terms." *Rios v. Direct Mail Express, Inc.*, 435 F. Supp. 2d 1199, 1204 (S.D. Fla. 2006) (citing 18 U.S.C. §§ 2721–2725). The DPPA establishes liability for both governmental actors and private entities. *See* 18 U.S.C. § 2721 (prohibiting disclosure by a "State department of motor vehicles"); 18 U.S.C. § 2722 (prohibiting disclosure by "any person"). Accordingly, the Secretary providing the Information to the Sun-Times does not immunize Sun-Times from liability.

Finally, the Sun-Times argues that it did not have the requisite intent—"knowingly"—to violate the DPPA because the Sun-Times relied on the Secretary's authorization. But this argument also misses the mark. As already mentioned, the "knowingly" element does not require that the Sun-Times knew that its obtainment, use, and subsequent disclosure of the Information was unlawful. *See Pavone*, 205 F. Supp. 3d at 967. Rather, "[v]oluntary action, not knowledge of illegality or potential

consequences, is sufficient to satisfy the mens rea element of the DPPA." *Senne v. Vill. of Palantine*, 695 F.3d 597, 603 (7th Cir. 2012); *see also Pichler v. UNITE*, 542 F.3d 380, 396 (holding that liability under the DPPA does not require that a defendant knowingly obtain or disclose personal information for a use the defendant knows is unlawful). There is no doubt that the Sun-Times knew it was obtaining and disclosing the Information. Whether it knew it was doing so unlawfully is irrelevant.

The Court finds no basis for reconsideration related to the Secretary and its alleged authorization to disclose the Information to the Sun-Times.

### *2. Appropriate Degree of Scrutiny*

Under the second category, the Sun-Times argues that (1) the Supreme Court's recent decision in *Packingham* imposes at least intermediate scrutiny to the obtainment claim, and (2) the Supreme Court's recent decision in *Reed* establishes that the DPPA should be treated as a content-based statute, thus requiring strict scrutiny of the disclosure claim. The Court finds neither case applicable.

The Court turns first to the obtainment claim. In *Packingham,* the Supreme Court considered a law that prohibited sex offenders from accessing private social networking websites. 137 S. Ct. at 1733. The Supreme Court applied intermediate scrutiny under an assumption that the law was content-neutral. *Id.* at 1736. To survive intermediate scrutiny, "a law must be 'narrowly tailored to serve a significant government interest.'" *Id*. (quoting *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014)) (internal quotation marks omitted). Applying such scrutiny, the

Supreme Court determined that the government has a legitimate interest in public safety (*e.g.,* protecting children from sexual predators) but said interest could not justify broad prohibitions, such as barring access "not only to commonplace social media websites but also to websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com." *Id.* Moreover, the Supreme Court was not swayed by the lower court's finding that "adequate alternative means of communication" existed for the offenders. *Id.* at 1375. The Supreme Court thus held the law unconstitutional because "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at 1737.

Here, the Sun-Times argues that *Packingham*, which came after the Seventh Circuit's ruling in this case, requires intermediate scrutiny on all access restrictions such as the DPPA's prohibition on obtainment. The Sun-Times also emphasizes that, like the Supreme Court, this Court should not be swayed by alternative means to access the Information. *See Id.* at 1735. So, the fact that "much of [the information] can be gathered from physical observation of the Officers or from other lawful sources" should not serve as a hurdle for applying such higher scrutiny. *See Dahlstrom*, 777 F.3d at 948.

Contrary to the Sun-Times' beliefs, *Packingham* is distinguishable and intermediate scrutiny does not apply here. Restricting an individual's access to social media is a far cry from restricting access to personal information from motor vehicle records. "Peering into public records is not part of the 'freedom of speech' that the [F]irst

[A]mendment protects. 'There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy.'" *Dahlstrom*, 777 F.3d at 947 (citing *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality opinion))). Moreover, the Seventh Circuit held that the DPPA's restriction on obtaining driver motor vehicle information "is not a restriction on speech at all." *Id.* at 949. As such, the Sun-Times' reliance on *Packingham,* along with *Brown v. Phillips*, 801 F.3d 849, 853 (7th Cir. 2015) (finding that banning R-related movies for sex offenders violated the First Amendment under the rational basis test), is misplaced. Intermediate scrutiny does not apply to the obtainment claim and, as established above, the government's interest in public safety is rationally related to prohibiting the obtainment of personal information in motor vehicle records. The Sun-Times' argument thus fails.

As for the disclosure claim, the Sun-Times argues that the Supreme Court and Seventh Circuit now require heightened scrutiny of certain content-neutral statutes nevertheless deemed content-based, citing *Reed v. Town of Gilbert*, 135 S. Ct. at 2231 (holding that the Sign Code — a comprehensive code governing the manner in which people may display outdoor signs — was content-based and thus subject to strict scrutiny) and *Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) (holding that the city's anti-panhandling ordinance was not content-neutral and thus violated the First Amendment). The Sun-Times argues that under *Reed,* the DPPA falls in the class of content-neutral statutes now

- 13 -

considered content-based, thus demanding an application of strict scrutiny. The Sun-Times also points to *Norton*, specifically, to demonstrate that the Seventh Circuit has already reversed its position on such content-neutral regulations in light of *Reed*. The Sun-Times' application of these cases, however, is mistaken.

In *Reed*, the Supreme Court emphasized that regardless whether laws "defin[e] regulated speech by particular subject matter" or "by its function or purpose," these defining characteristics are "[b]oth distinctions drawn based on the message a speaker conveys, and therefore, are subject to strict scrutiny." 135 S. Ct. at 2227. The Supreme Court also recognized an additional category of laws, though content neutral, that must be considered content-based: "laws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message [the speech] conveys." *Id*. (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotation marks omitted). The Supreme Court ultimately considered the Sign Code content-based because it defined categories of temporary, political, and ideological signs on the basis of their messages and then subjected each category to different restrictions for sign placement. *Id*. Those restrictions applied thus depended "entirely on the communicative content of the sign." *Id*; *see also Norton*, 806 F.3d at 412 (citing *Reed*, 135 S.Ct. at 2227) (finding similarly post-*Reed* that "regulation of speech is content based if a law applies to particular speech because of the topic discussed *or* the idea or message expressed").

- 14 -

The Sun-Times' reliance on *Reed* and *Norton* is unfounded. The Sun-Times argues that the DPPA falls within the *Reed*-defined category of content-neutral laws considered content-based because determining whether something constitutes personal information requires looking at the content of the speech, *i.e.*, the information provided in the motor vehicle records. The Court disagrees. Although it is true that one must look to the information in dispute to determine whether it constitutes "personal information" under the DPPA, such information is not "content" for purposes of the First Amendment, and it is not something the government has disagreed with because of the "message [it] conveys." *See Reed*, 135 S. Ct. at 2227 (citation omitted). The Seventh Circuit made clear in this case that "the DPPA is content neutral because its public safety goals are 'unrelated to the content of [the regulated] expression.'" *Dahlstrom*, 77 F.3d at 950. Finally, the DPPA regulates source—motor vehicle records—and not subject matter. *Id.* "The Supreme Court has concluded that disclosures that are prohibited 'by virtue of the source, rather than the subject matter' are easily categorized as content neutral," and thus subjected to intermediate scrutiny. *Id.* (citing *Bartnicki*, 532 U.S. at 526). So, the DPPA does not fall into the *Reed*-defined category of content-neutral statutes now considered content-based. As discussed, the DPPA is distinguishable from this new category mentioned in both *Reed* and *Norton*. The Sun-Times' argument thus fails, and strict scrutiny of the disclosure claim is unwarranted.

The Court finds no basis for reconsideration in light of the Supreme Court's rulings in *Packingham* or *Reed*, nor in the Seventh Circuit's holding in *Norton*.

### *3. Discovery and the Balancing Test*

Finally, under the third category, the Sun-Times argues that new evidence uncovered in discovery—specifically, the depositions of the Sun-Times' reporters and Plaintiffs—shifts the balance of interests in Sun-Times' favor.

As a content-neutral restriction, Section 2722(a)'s limitation on disclosure is subject to intermediate scrutiny. The Section thus passes muster if it "furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Dahlstrom*, 777 F.3d at 952 (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994)).

The Sun-Times argues that in light of new evidence uncovered in discovery, the Court should reevaluate the balance between the government's interest in privacy and the Sun-Times' interest in publishing a matter of public significance. First, the Sun-Times offers the depositions of Tim Novak and Chris Fusco—two of its own reporters— who assert that the Information was necessary to contrast two lineup photos: the lineup with fillers and another with Vanecko's friends present during the night of Koschman's death. The Sun-Times argues that these depositions demonstrate that publishing the Information was a far

greater matter of public significance than the Seventh Circuit concluded. Second, the Sun-Times asserts that Plaintiffs' depositions reveal that none of the officers admit to privacy concerns related to the publication or disclosure of the Information. The Sun-Times argues that these officers' depositions thus diminish the government's alleged interests in the balance. In sum, the Sun-Times contends that the proffered discoveries now tip the balance of interests in its favor. The Court disagrees.

The Sun-Times fails to proffer any arguments or evidence that controverts the Seventh Circuit's balancing of the interests at issue. As the Seventh Circuit elaborated in detail:

> Although the Sun-Times article relates to a matter of public significance — the allegation that the [CPD] manipulated a homicide investigation — the specific details at issue are largely cumulative of lawfully obtained information published in that very same article, and are therefore of less pressing public concern than the threats of physical violence in *Bartnicki*. While Sun-Times provided details of the Officers' physical traits to highlight the resemblance between the "fillers" and Vanecko, most of the article's editorial force was achieved through publication of the lineup photographs that Sun-Times obtained through its FOIA request — the value added by the inclusion of the Officers' personal information was negligible. Each Officers' height is evidence from the lineup photographs, while their weights and ages are relevant only to the extent that they increase the Officers' resemblance to Vanecko — a resemblance that the photographs independently convey. And, although identifying the Officers' hair and eye colors may add some detail to the published black-and-white photographs, their personal information is largely redundant of what the public could easily observe from the photographs themselves. Therefore, Sun-Times's publication of the Officers' personal details both intruded on their privacy and threatened their safety, while doing little to advance Sun-Times's reporting on a story of public concern.

*Dahlstrom*, 777 F.3d at 953. The Sun-Times argues that the Seventh Circuit failed to consider that the Information was published to compare the first lineup with a second. On this score, the Court notes that the second lineup photo with Vanecko's friends fails to include the type of information provided with the first lineup and at issue in this case (*i.e.*, birthdate, height, weight, hair color, and eye color). Regardless, the Court fails to see how the Sun-Times' proffered evidence changes the Seventh Circuit's analysis. With or without the Information, the Sun-Times' readers may infer similar findings from viewing the two lineup photos side-by-side: (1) that the "fillers" very much resembled Vanecko in physical appearance in the first lineup photo, and (2) the second lineup photo, where Vanecko and his friends are sitting down, conceals physical disparities in height and weight. The inclusion of the Information, even after considering the second lineup photo, is "largely cumulative." *Id.*

The fact that the police officers did not admit to any privacy concerns from the publication of the Information is irrelevant. The government's interests in promulgating a law has nothing to do with whether those interests are maintained or realized by those the law happens to protect. Additionally, other interests, such as "removing an incentive for parties to unlawfully obtain personal information in the first place" and "minimizing the harm to individuals whose personal information has been illegally obtained" counsel in favor of the government, regardless of whether the privacy interests are heeded. *Id.* at 952. The Court thus concludes that the Seventh Circuit's analysis

- 18 -

controls and the Sun-Times has failed to show that there has been a shift of balance in its favor.

The Court finds no basis for reconsideration in light of the newly-produced evidence.

### III. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Reconsideration (ECF No. 112) is granted, and Defendant's Motion for Reconsideration (ECF No. 110) is denied. As such, the Court enters judgment for Plaintiffs on all claims.

**IT IS SO ORDERED.**

                                                Harry D. Leinenweber, Judge
                                                United States District Court

Dated: 9/27/2018