IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOTT DAHLSTROM, HUGH
GALLAGLY, PETER KELLY,
ROBERT SHEA, and EMMET WELCH,

                              Plaintiffs,

          v.

SUN-TIMES MEDIA, LLC d/b/a
THE CHICAGO SUN-TIMES,

                              Defendants.

Case No. 12 C 658

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiffs Scott Dahlstrom, Hugh Gallagly, Peter Kelly, Robert Shea, and Emmet Welch bring a Motion for Relief (Dkt. No. 136). For the reasons stated herein, the Motion is denied.

## I.   BACKGROUND

The facts of this case are described in greater detail in the Court's most recent opinion, *Dahlstrom v. Sun-Times Media, LLC,* 346 F. Supp. 3d 1162 (N.D. Ill. 2018), and in the Seventh Circuit's earlier ruling, *Dahlstrom v. Sun-Times Media, LLC,* 777 F.3d 937(7th Cir. 2015). As relevant here, five police officers brought this action against Sun-Times Media, LLC ("Sun-Times") after the paper published a series of investigative reports criticizing a Chicago Police Department ("CPD") investigation. CPD investigated a homicide involving a nephew of then-Chicago Mayor Richard M. Daley,

but the investigation did not result in any charges. *See Dahlstrom,* 346 F.Supp.3d at 1165.

On November 21, 2011, Sun-Times published an article titled, "Daley Nephew Biggest Guy on Scene, But Not in Lineup," describing how a police lineup contained only men closely resembling Daley's nephew. *Id.* The article included a lineup photo showing Plaintiffs as "fillers," and published a graphic, with information Sun-Times obtained through the Freedom of Information Act ("FOIA") and from the Illinois Secretary of State, identifying Plaintiffs by name, birthdate, height, weight, hair color, and eye color. *Id.* at 1156. Plaintiffs alleged that Sun-Times violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–2725 by obtaining personal information from their motor vehicle records and disclosing that information to the public. *Id.*

In 2013, Sun-Times moved to dismiss, and the Court denied the motion. *See Dahlstrom v. Sun-Times Media, LLC,* No. 12 CV 658, 2013 WL 6069267 (N.D. Ill. Nov. 18, 2013). The Court certified the case for interlocutory appeal, and the Seventh Circuit affirmed the Court's ruling. *See Dahlstrom*, 777 F.3d at 954–55. After engaging in discovery, Plaintiffs moved in 2016 for judgment on the pleadings, which the Court denied "with respect to obtaining the personal information" and granted "with respect to the publication of the personal information." *See Dahlstrom,* 2016 WL 5477889, at

*4. The parties engaged in more discovery, and both parties moved the Court to reconsider its ruling. On September 27, 2018, the Court issued its most recent ruling, *Dahlstrom,* 346 F.Supp.3d 1162, granting Plaintiffs' motion to reconsider and denying Defendant's. On the same day, the Court entered judgment for Plaintiffs and closed the case. (*See* Judgment, Dkt. No. 125.) Sun-Times appealed, and in a short order dated February 12, 2019, the Seventh Circuit dismissed the appeal for lack of jurisdiction. The Seventh Circuit wrote:

> A judgment must provide the relief to which the prevailing party is entitled. Neither the paper captioned "Judgment in a Civil Case" nor the district court's corresponding Memorandum Opinion and Order, both entered on September 27, 2018, provides the relief awarded to plaintiffs or states explicitly that no relief is awarded to plaintiffs. All the papers say is that one motion was granted and another was denied and that plaintiffs won on all claims — nothing more. The district court must explicitly determine what relief, if any, is awarded to plaintiffs.

(Order, Dkt. No. 131 (internal citations omitted).)

For a long time after, nothing happened. Then, on February 11, 2020—a day short of a year after the Seventh Circuit's dismissal—Plaintiffs filed a new motion, requesting the Court award Plaintiffs $125,000 in liquidated damages and additional punitive damages. Plaintiffs argue that Sun-Times continues to violate Plaintiffs' DPPA rights because Sun-Times kept the offending

- 3 -

article archived on the website "Scribd.com," a third-party host. (The information was apparently removed in March 2020.) Plaintiffs claim that article has remained on the website since November 2012. Plaintiffs demand $2,500 in liquidated damages for each year the article has remained on the website, plus $2,500 for the obtainment of the information; in the alternative, Plaintiffs request a trial to determine punitive damages. Markedly, some of these demands and allegations are new: Plaintiffs' Complaint mentions nothing about a third-party host, and asks only for actual damages, not less than $2,500 in liquidated damages for each Plaintiff, a declaratory relief, an injunctive order, punitive damages, and attorneys' fees and costs. (Compl. at 6–7, Dkt. No. 1.) The Court addresses the Motion below.

## II. DISCUSSION

### A. Timeliness

At the threshold, Sun-Times argues that this Motion is untimely. Sun-Times argues that Plaintiffs' Motion can be nothing but a request to amend the judgment through Federal Rules of Civil Procedure 59 or 60, and under both of those rules the Motion is time-barred. Rule 59 concerns motions to alter or amend a judgment, which must be filed "no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Rule 60(a) allows a court to "correct a clerical mistake or a mistake arising from oversight or

omission whenever one is found in a judgment," and 60(b) provides for relief from a final judgment, order, or proceeding. FED. R. CIV. P. 60(a) & (b). Courts may amend a judgment pursuant to Rule 60(a) "on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." *Id.* Amending a judgment through Rule 60(b) requires a motion to be made within a reasonable time, but "no more than a year after the entry of the judgment." *Id.* 60(c)(1).

Sun-Times argues that a Motion to Alter the Judgment is well past any allowed timeframe enumerated in Rules 59 or 60. As a basic matter of counting, this is true. The Court entered a judgment on September 27, 2018. Plaintiffs note that they filed their Motion a year short of a day from the date of the appellate dismissal out of caution in case their Motion is governed by Rule 60. This may have been wise had they not misread the rule: the text clearly states that the motion must be filed within a year of the *judgment,* and here that would have been September 26, 2019, rather than February 11, 2020. The Court notes that given the appeal was dismissed rather than reversed and the case was marked as closed, Plaintiffs should not have waited for the Court to award relief *sua sponte;* it was incumbent on them to file a motion for relief,

- 5 -

and to do it within the right time. Thus, any motion to alter or amend that judgment under Rules 59 or 60 must have been filed, at the very latest, long before February 11, 2020.

Plaintiffs assert that their Motion is not brought under Rules 59 or 60 but are not so helpful as to specify the procedural vehicle they use to request relief. But it must be something because their Motion cannot be unattached to procedural rules. The Federal Rules of Civil Procedure "govern the procedure in all civil actions," and so any motion must be brought under the Rules. FED. R. CIV. P. 1. It is helpful to start by examining what Plaintiffs are trying to do. They are ultimately asking the Court to amend the judgment (as the Seventh Circuit ordered) to specify an amount of money that Sun-Times must pay, and they are doing this a year and a half after the judgment was entered. Plaintiffs describe their filing as a "Motion to Address Plaintiffs' Relief," but that is not helpful. (*See* Pls.' Reply at 9 n.1, Dkt. No. 146.) Thus, before determining whether the Court should award the Plaintiffs any relief, it must determine the Rule, and whether Plaintiffs are asking for relief too late.

Rule 60 has the most generous timeframe, so the Court starts there. Rule 60(a) allows correction of a judgment based on a clerical mistake, oversight, or omission, and Rule 60(b) enumerates grounds for relief from a final judgment, order, or

proceeding. Neither subsection is helpful. With respect to Rule 60(a): "It is settled that this rule applies only to an error of transcription, copying, or calculation, and not to a fundamental failure of discovery or notification." *Bershad v. McDonough*, 469 F.2d 1333, 1336 (7th Cir. 1972). Though nobody here alleges a failure of discovery or notification, the legal determination of damages is not a matter of transcription, copying, or arithmetic; it is a substantive matter, so Rule 60(a) inapplicable.

Rule 60(b) is similarly unhelpful. "Rule 60(b) is a rule of general application, providing relief from all types of final judgments." *C.K.S., Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984). By its terms, the rule is limited to "final" judgments and orders. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006). A final judgment is a "court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs . . . and enforcement of the judgment." "Final judgment," *Black's Law Dictionary,* (11th ed. 2019). And every final judgment "should grant the relief to which each party is entitled." FED. R. CIV. P. 54(c). Damages remained an issue in controversy that the judgment did not address. It was therefore not final, and so Plaintiffs' Motion cannot be construed as a Rule 60(b) motion either. Thus, Plaintiffs' Motion cannot be taken as a Rule 60 motion.

- 7 -

Rule 59(e) governs motions to alter or amend a judgment and provides a 28-day time limit "after the entry of the judgment." FED. R. CIV. P. 59(e). Unlike Rule 60(b), Rule 59(e) does not include the "final" qualifier. It thus is most appropriate to construe Plaintiffs' Motion as a Rule 59 Motion, but, as previously discussed, it is far outside the allowed time. Normally, when "a motion is filed more than 28 days after entry of judgment, whether the movant calls it a Rule 59(e) motion or a Rule 60(b) motion, or does not denominate any Rule, it is treated as a Rule 60(b) motion." *Moore v. Pipefitters Ass'n Local Union 597*, 306 F.R.D. 187, 191 (N.D. Ill. 2014). The Court has already found that the Motion does not qualify under Rule 60. Regardless, under either Rule, it is untimely.

The Seventh Circuit has "held many times that judgments must provide relief and must not stop with reciting that motions were granted or denied—indeed that it is inappropriate for a judgment to refer to motions at all." *Cooke v. Jackson National Life Insurance Company*, 882 F.3d 630, 631 (7th Cir. 2018). The Judgment was deficient in exactly this way, and that error belongs to the Court, not to the parties. And yet, Plaintiffs noted in their jurisdictional brief to the Seventh Circuit that Sun-Times should not have appealed only a day after entry of Judgment and "before [Plaintiffs] were able to move for relief." (Brief at 2, Def.'s

Resp., Ex. G, Dkt. No. 141-1.) Plaintiffs never so moved, and it's unclear why they didn't, particularly when they acknowledged that they could. Even considering the Court's error, Plaintiffs cannot be excused for waiting so long to file a motion requesting relief. For those reasons, it is untimely.

### B. Damages

Even if the Motion were not untimely, however, the Court finds that Plaintiffs are not entitled to any damages. Plaintiffs request liquidated damages of $125,000, or $2,500 for the DPPA violation for each Plaintiff, plus $2,500 for each Plaintiff for every year Plaintiffs' personal information remained on the Scribd website.

According to the DPPA, the Court "may award—(1) actual damages, but not less than liquidated damages in the amount of $2,500. . ." 18 U.S.C. § 2724. The parties disagree about whether Plaintiffs need prove that they suffered actual damages to receive an award, and Sun-Times argues that Plaintiffs should not be compensated because they have suffered no actual damages. Plaintiffs argue that they need not prove actual damages and that Plaintiffs suffered unquantifiable emotional damages when Sun-Times published their personal information.

In a case involving a different but similarly worded statute, the Supreme Court held that the plaintiff could not obtain statutory damages without proof of an actual injury. *Doe v. Chao*,

540 U.S. 614 (2004); *see also* 5 U.S.C. § 552a(g)(4)(A) (allowing award of "actual damages sustained by the individual as a result of the refusal or failure [of a federal agency to comply with the Privacy Act], but in no case shall a person entitled to recovery receive less than the sum of $1,000."). In a case discussing *Doe* and actual damages related to yet another different but similarly worded statute, the Seventh Circuit referenced the DPPA. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538–39 (7th Cir. 2012). The Seventh Circuit pointed to two out-of-circuit cases that distinguished *Doe* and found that statutory damages could be awarded without a showing of actual damages. *Id.* at 538. But the Seventh Circuit only noted the DPPA for comparison and wrote that they "need not decide whether" they agreed with the out-of-circuit cases distinguishing *Doe*. *Id.* at 539. Importantly, however, the Seventh Circuit noted that those cases involved appropriation of private information, which inflicted a "perceived although not quantifiable injury." *Id.*

One of those cases is instructive, particularly because Plaintiffs rely on it so heavily in their briefs. In *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), the plaintiffs sued Fidelity, a savings bank, for purchasing from the State of Florida's Department of Highway Safety the "names and addresses of individuals who had registered new motor vehicles."

*Id.* at 1210–11. Fidelity then forwarded that information to a third-party mass mailing service provider, who sent solicitations to individuals to refinance their vehicles. *Id.* at 1211. The Eleventh Circuit found:

> Damages for a violation of an individual's privacy are a quintessential example of damages that are uncertain and possibly unmeasurable. Since liquidated damages are an appropriate substitute for the potentially uncertain and unmeasurable actual damages of a privacy violation, it follows that proof of actual damages is not necessary for an award of liquidated damages.

*Id.* at 1213. This is persuasive and not binding precedent. But for the purposes of this case, it is compelling. This is because in this case the Court can discern actual damages: by Plaintiffs' own admissions, actual damages do not exist.

Sun-Times published certain personal details about Plaintiffs. By publishing some of those details, the paper broke the law. But other details—namely, the officers' names and photos— were obtained lawfully through FOIA, and Sun-Times was well within its rights to publish that information. (*See Dahlstrom*, 777 F.3d at 941 ("The Officers do not challenge Sun-Times's publication of their photographs or names, as they concede that Sun-Times lawfully obtained that information pursuant to its FOIA request.").) In their depositions, Plaintiffs made it clear that their true grievance was with the information that was published legally. For example, Plaintiff Welch testified that he had a grave concern for

his safety because of "the fact that my photo was on the front page of the Sun-Times identifying me as a police officer involved in the lineup," and stated that he experienced emotional distress over having his "photograph on the cover of the Sun-Times." (Welch Dep. at 54:9-20 & 94:22-95:2, Def.'s Resp., Ex. A, Dkt. No. 141-1.) Every Plaintiff made a similar admission. (*See e.g.,* Shea Dep. at 56:13-57:3; Dahlstrom Dep. at 51:6-13 & 81:17-22; Gallagly Dep. at 79:10-24; & Kelly Dep. at 94:20-95:14, Def.'s Resp., Exs. B, C, D & E, Dkt. No. 141-1.) This means that there is not even a "perceived although not quantifiable injury" because of the Sun-Times's DPPA violation; the real grievance is one for which Plaintiffs do not have a cause of action. (*See* Dahlstrom Dep. at 66:4-13: "Q: Is it your hope that this lawsuit will make newspapers, the media generally, more hesitant to publish photographs of police officers in the future? A: Yes. I wish it would stop actually, yeah.") Particularly because the statute gives the Court discretion to award damages, it is hard to justify an award when Plaintiffs, by their own admission, have suffered no actual injury.

Finally, Plaintiffs demand punitive damages. The DPPA allows for the imposition of punitive damages "upon proof of willful or reckless disregard of the law." 18 U.S.C. § 2724. Sun-Times argues that the Illinois Secretary of State authorized the disclosure,

and even if this does not make publication of the information lawful, it does preclude Sun-Times from being found to have recklessly or willfully disregarded the law. The press may "rely on the government's implied representations of the lawfulness of the dissemination." *Fla. Star v. B.J.F.*, 491 U.S. 524, 536 (1989). The Court previously found that Sun-Times could not claim reliance on the Illinois Secretary as a defense because the DPPA "does not create a good faith defense or bestow immunity upon those who rely upon state agencies to act in compliance with its terms." *Dahlstrom*, 346 F.Supp.3d at 1169 (citing *Rios v. Daily Mail Express, Inc.*, 435 F.Supp.2d 1199, 1204 (S.D. Fla. 2006)). But with respect to punitive damages, it makes a difference that Sun-Times can claim reliance on the Illinois Secretary's disclosure of the information. Accordingly, Plaintiffs are entitled to no punitive damages for the publication.

Plaintiffs next argue that they are entitled to punitive damages because Plaintiffs' identifying details remained on the Scribd website until they were taken down in March 2020. This was obviously well after the Court entered judgment for Plaintiffs on the pleadings in 2018, and Plaintiffs assert that they are entitled to punitive damages because of a continuing DPPA violation. Sun-Times responds that Scribd is a third-party provider and that Plaintiffs never alleged any claim based on a third-party archive

and to assert one now constitutes a new post-judgment claim. Sun-Times also notes that Plaintiffs took no discovery to establish that anyone had any knowledge that the article was on Scribd. These arguments are well-taken. A year and a half after the judgment, Plaintiffs cannot come forward and argue that they are entitled to punitive damages when there is no evidence in the record that anyone at Sun-Times knew that the information remained available on the internet.

For these reasons, the Court finds Plaintiffs are not entitled to damages even if their Motion were timely.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' Motion for Relief (Dkt. No. 136) is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 8/14/2020

- 14 -